F. G. NEWCOMER ET AL. v. THE STATE OF TEXAS.

No. 7316.

1.    **Tax Collector.**—When a default is shown in the accounts of a tax collector who has succeeded himself in office, if the default of one year is attempted to be made good by the appropriation to its payment of taxes collected on the next year's account, and if the deficit so produced in the second account is in turn discharged by the application of moneys due on the next succeeding account, the default should be attributed to the first account.    If the last account be not settled a wrongful application of payments to a former account may be corrected at the instance of the sureties on the last bond, who are entitled to have erroneous payments applied to discharging the account for the year to which they properly belong.

2.    **Fact Case.**—For facts exempting the sureties on a tax collector's bond from liability, see opinion.

APPEAL from Travis.    Tried below before Hon. W. M. Key.

The opinion states the case.

*Simpson & James,* for appellants. — 1.    The court erred in ruling that the $1109.12 was improperly credited to Hamilton's account for the year ending June 30, 1886, in view of the facts in evidence showing that Hamilton's account for the next succeeding year was fully balanced and settled without said $1109.12 and by said sheriff applying thereto a greater amount of his own funds.

2.    There being no deficiency shown, or, more correctly speaking, it being shown that there was no deficiency in the sheriff's account for the fiscal year ending May 30, 1887, then no damage has resulted from the misapplication of the school voucher.

*J. S. Hogg* and *James H. Robertson,* for the State. — 1.    It was unlawful for Henry Hamilton, as collector of taxes for Bandera County, to apply the tax money collected for the year 1887 to the payment of a defalcation for the fiscal year ending June 30, 1886, and the application of the school voucher for $1109.12, which was paid out of the taxes for the year ending August 31, 1887, to the credit of the account for the year ending June 30, 1886, was a fraud upon the sureties of said Hamilton on his bond for the term beginning November 24, 1886, as said money was collected under said bond, and under the law could only be credited to the account for the year ending May 1, 1887.    The State v. Middleton's Sureties, 57 Texas, 189.

2.   The application of private funds to the settlement of the account for the year 1887 would not deprive the second set of sureties of their right to have the public money properly applied to their credit, and it appears from the accounts for the second term, if this money had been properly credited the default for the second term would have been just $1109.12 less than it was.

GAINES, ASSOCIATE JUSTICE.— This suit was brought by the State against the sureties on the bond of one Henry Hamilton, given to secure the performance of his duties as tax collector of Bandera County for a regular term of office beginning in the year 1884.   The object of the suit was to recover tax money collected by Hamilton during that term of office and alleged not to have been paid to the State.   He was elected sheriff, and by virtue of that office was the collector of taxes for his county.   In the year 1886 he was elected to succeed himself, and gave a new bond. Only one of the sureties on the first was a surety on the second bond. The State claimed in this suit the sum of $2217.46, and recovered a judgment for $1109.12.   The defendants appeal, and complain that there was error in rendering judgment against them for any amount; and the State files cross-assignments of error, claiming that it should have had a judgment for the entire sum sued for in the petition.

Hamilton died before the suit was brought.   It is conceded that during his two terms of office he was a defaulter to the amount claimed in the petition.   The questions are, which set of sureties are liable? and if neither are liable for the whole, what is the extent of the liability of each?   The several accounts of Hamilton from the department of the Comptroller for the fiscal years ending in 1886, 1887, and 1888 were read in evidence.   On the account of the first year he was indebted to the State in the sum of $213.01, which was charged against him in the next year's account.   The second and third accounts were balanced, and the last showed an indebtedness due the State of $2189.08.

It follows that the liability of these appellants depends upon the question whether the second year's account was ever properly balanced or not. The bond for Hamilton's second term was approved by the Commissioners Court of the county on the 29th of November, 1886, but was not formally approved by the Comptroller until the 3d of March, 1887.   At the former date the account shows that there was a balance due, $2262.46.   Subsequently to that date the following credits were entered:   December 8, 1886, deficiency claim, $45; same date, deficiency claim, $296.75; March 2, 1887, "draft," $811.59; "Coupon 2–7," $1109.12.   The State contends that the last three items were improperly credited upon this account, and that they should have been credited to the account of the next succeeding year.   To sustain this contention the State invokes the principle announced in the case of The State v. Middleton's Sureties, 57 Texas, 185, that as between

the sureties upon the successive bonds of a tax collector, taxes paid into the treasury must be credited to the account of the year during which they are collected, and can not be appropriated to make good a defalcation of a previous year. The item of $296.75 was proved to be for money due Hamilton as sheriff, and the Comptroller, there being no instructions to do otherwise, properly applied it to the account in question. The credit designated as "Coupon 2–7" for $1109.12 was a voucher for money paid to the county treasurer upon the order of the Comptroller in discharge of the portion of the available school fund set apart to Bandera County. The court below held in effect that this item was improperly allowed as a credit on the account sued upon. There was no evidence to show whence the money was derived with which the draft for $811.59 was paid. The court, however, held that it was a proper credit. We surmise that the trial judge was of the opinion that the circumstances created the presumption that the coupon was paid with money collected on the tax rolls of 1886, and that no such presumption was raised in the case of the draft. Whether these conclusions were correct or not we need not determine, for we are of opinion that if it had been shown that both of the payments had been made with tax moneys which were collected on the rolls of 1886, and for which the sureties on the second bond were responsible, it would not under the facts of this case have established the liability of these defendants, the sureties on the first bond. As between the State and Hamilton, the principal, it was a matter of no moment how the payments were appropriated. The application only becomes important as between the sureties upon the first and those upon the subsequent bond; and if it has not operated to the prejudice of the latter no reason is seen why the credits as applied should not be allowed. The claim is that money was appropriated to the credit of the account ending June 30, 1886, which the law holds primarily applicable to an account for which the sureties on the second bond were liable, namely, the account for the year ending May 1, 1887. Should such be the fact the latter sureties have no right to complain, provided their principal has paid the account for the year ending in 1887 without appropriating to its settlement tax moneys which should have been applied to the account of the next succeeding year. If the default of one year is attempted to be made good by the appropriation to its payment of taxes collected on the next year's account, and if the deficit so produced in the second account is in turn discharged by the application of moneys due on the next succeeding account, the default should be attributed to the first account. If the last be settled no harm accrues; if not, then the payments properly applicable to it must be so applied. Such application necessarily produces a deficit in the second account, and gives the sureties who are responsible for its adjustment the right to have the payments wrongfully appropriated to the first withdrawn and applied as they should have been in the first instance.

But in this case if the account for the year ending May 1, 1887, was balanced .without drawing upon the taxes charged on the account of the succeeding year, the sureties on the second bond have no cause to complain of any misappropriation of the tax moneys of that year. It was their right to demand that when any of such moneys were paid into the treasury they should be applied to the credit of the account against the tax collector upon which such taxes were originally charged until that account was settled, but that right ceased as soon as the account was discharged with funds not collected as taxes.

When we turn to the evidence in the case we are satisfied that the account for 1887 was discharged without resort to the taxes applicable to the account of the next year. The statement of facts contains this language: "Defendants also showed that the items in the Comptroller's several statements of H. Hamilton's accounts above set forth, styled 'treasury warrant,' 'Comptroller's draft,' 'deficiency claim,' and 'drafts,' were private funds and funds pretaining to his office as sheriff, and not tax moneys." The items so designated embrace all the credits for money paid on the account for the year ending in 1887, except two coupons credited in June and July of that year. The dates of these coupon credits show that they were not paid with taxes chargeable on the account of the next year. These taxes were not collectable until the 1st of October next after the credits were entered. Rev. Stats., art. 4739.

But again, let it be admitted that the account of the fiscal year ending in 1886 was paid off with funds that should have been paid upon the account of next year. It was then Hamilton's duty to the sureties on the second bond either to correct that misappropriation or to redress the wrong done them by making good the deficit produced by it on the next year's account by a payment from his own private funds. Having done the latter, they were not injured. The result is precisely the same as if the proper application had been made in the first instance and his private funds had been applied to make good the original default.

For the reasons given we are of opinion that the court erred in giving judgment against the defendants for even a part of the State's demand, and that the judgment should be reversed and here rendered for them; and it is so ordered.

*Reversed and rendered.*

Delivered May 13, 1890.