### M. B. LOYD ET AL. v. CITY OF FORT WORTH.

#### No. 2163.

1. **New Bond by Tax Collector of City.**—Under article 366, Revised Statutes, the council of a city acting under the general incorporation law has power to exact a new bond from the tax collector "whenever in their opinion the existing bond is insufficient."   Such bond only relieves the sureties upon the old bond for the future actions of the principal.

2. **Same — Statute Construed.**—That the city council, acting under article 366, may have intended the new bond as a substitute in all respects for the old, and formally *cancelled* the old bond, would not affect the liability of the sureties on such old bond. The council has no power to relieve them from liability already incurred at the making of the new bond.

3. **Credit Upon Official Bond.** — It appearing that subsequent to the execution of a new official bond by the city tax collector he had reduced his indebtedness to the city below that existing at the making of the new bond, this fact would operate, to the extent of the reduction, as a credit upon the liability of the sureties upon the old.   The court refusing so to instruct the jury, his refusal is ground for reversal, the testimony showing such reduction.

APPEAL from Tarrant.   Tried below before Hon. SAM. J. HUNTER, Special District Judge.

The opinion states the case.

*H. M. Chapman* and *Frank W. Ball,* for appellants.—The court erred in sustaining the demurrer of the plaintiff to the third and fourth special pleas of defendants.   [See opinion.]   The pleas each showed a valid defense.   Sayles' Civ. Stats., arts. 342, 370, 418, 432, 366, 438, 497; Dill. on Mun. Corp., 4 ed., secs. 94, 95, 238; Glidden v. Unity, 33 N. H., 571; Martel v. East St. Louis, 94 Ill., 67; 21 Albany Law Jour., 76, 195.

*Capps & Cantey*, for appellee.—1. Appellee, the city of Fort Worth, had no power or authority to require a new bond, and by its order and agreements make the same retroactive to the extent of releasing the sureties on the original bond for all defalcations of their principal occurring prior to the execution of said new bond.

2. If said bond was retroactive, its legal effect would simply be a joint security with the first bond, and to have been available to the appellants the second set of sureties should have been interpleaded by them.

3. Appellee having no authority to relinquish or cancel any security by it held to cover the faithful conduct of its officials, the plea of estoppel based on that statement of facts was properly dismissed.

4. There being no evidence in the record that the defalcation of Blackman as it existed at the expiration of his first bond was at any date reduced below $8029, the amount claimed in plaintiff's petition, the court did not err in its instructions to the jury limiting plaintiff's recovery to the amount claimed in the petition. Rev. Stats., art. 366; Murfree on Official Bonds, secs. 218, 454, 638, 641, 631, 278, 763, 769; United States v. Babbitt, 5 Otto, 334; 5 Myers' Fed. Dec., sec. 253; State v. Moses, 18 S. C., 366; State v. Roberts, 21 Ark., 260; Bruce v. United States, 17 How., 443; Murfree on Official Bonds, secs. 218, 219; Commissioners v. McCormick, 4 Mont., 115; 4 Myers' Fed. Dec., sec. 522; Heppe v. Johnson, 73 Cal., 265; Crocker v. Old South Society, 106 Mass., 498; Newman v. Dodson, 61 Texas, 91; Hetten v. Lane, 43 Texas, 289; Parker v. Medsker, 80 Ind., 155; Governor v. Robbins, 7 Ala., 79; Dumas v. Patterson, 9 Ala., 484.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellee upon the official bond of J. W. Blackman, as city assessor and collector of taxes, to recover money which he collected and failed to pay to the city treasurer.

Blackman began collecting on the 22d day of April, 1885, and continued to do so until the 7th day of January, 1886. The appellants were his sureties upon the bond given by him at the beginning of his term. On the 3d day of June, 1885, the city council adopted and entered of record a resolution reading as follows:

"Resolved, That the bond of Mr. J. W. Blackman, city assessor and collector, be cancelled, and that he be required to furnish a new bond in the sum of $20,000."

A new bond with different sureties was executed by Blackman on the same day, and accepted and approved by the city. The city had accepted the provisions of Title 17 of the Revised Statutes. An auditor was appointed, whose report is the only evidence that the record contains in regard to the collection and disposition of the city's funds by the collector.

From that report it appears that on the 3d day of June, 1885, Blackman had failed to pay to the city treasurer the sum of $49,575.24 of collections made by him preceding and including that date; that the total sum that he was in default for the entire period of his office was the sum of $8029.07. The auditor testified as a witness, that his report "shows that on the 23d day of June, 1885, J. W. Blackman was only in arrears in the sum of $5482.35, but that both before and after that time it was a larger sum."

Upon the verdict of a jury a judgment was rendered in favor of the plaintiff for the sum of $7889.48, besides interest.

Both sets of sureties were solvent, and the material question was as to how much of the entire sum unaccounted for the sureties upon the first bond were responsible for.

The plaintiff sought to recover in this suit the whole amount of the defalcation.

The defendants pleaded a general denial, and specially as follows:

"3. Further answering herein, these defendants say that they are not liable to plaintiff on account of the alleged defalcations of the said Blackman as therein set forth, for that they aver that heretofore, to-wit, on the —— day of May, 1885, and after these defendants had signed as sureties and executed the bond upon which plaintiff's action is based, these defendants applied to the city council of the city of Fort Worth, plaintiff herein, and requested said plaintiff to permit said bond of said Blackman, sued on herein, to be cancelled and a new bond to be substituted in lieu thereof, with good and sufficient sureties, which said new bond should stand in the place and stead of the bond herein sued on. Whereupon said city council thereafter, on to-wit, the 3d day of June, 1885, agreed with these defendants and with the said Blackman that the bond herein sued on should be cancelled, set aside, and for naught held, upon the giving of a new bond in lieu thereof with satisfactory sureties thereon, to be furnished to said council by said Blackman.

"That thereupon the said Blackman procured and caused to be executed a certain other new and further bond, conditioned as the law requires, with the names of divers parties signed thereto, all of which parties were then and there and still are solvent and fully able to pay off and satisfy any verdict or judgment which might be rendered against them on account of any defalcation of said Blackman, and then and there tendered same to said city council as a substitute for the bond herein sued on, and requested that said last named bond should be cancelled. Whereupon said plaintiff through its city council did then and there receive and accept the said new bond so made and executed as aforesaid in place and lieu of the bond herein sued on, and did then and there cancel and cause to be cancelled the said last named bond, with the full and fair understanding between all of the said parties, in-

cluding the obligors on said new bond, that the same should stand in the place and stead of the bond herein sued on; wherefore defendants say they are not liable to plaintiff for any amount whatever occasioned by the alleged defalcations of said Blackman during any part of his term.

"4. Further answering, these defendants say that they did, on the day aforesaid, apply to and request the said city council as aforesaid to cause the said bond herein sued on to be set aside and cancelled as aforesaid, and that the said city council did, in the manner and form as aforesaid, cause the same to be cancelled, set aside, and for naught held, as aforesaid, at the time aforesaid, and did thereafter at the time aforesaid accept and receive said new bond in lieu of and as a substitute for the bond herein sued on as aforesaid, and did release and discharge defendants from all liability on the bond herein sued on as aforesaid, and that these defendants in good faith, believing that plaintiff had the right and power through its said council to effectuate their release as aforesaid and cancel said official bond as aforesaid, did thereupon forbear and refrain from taking any other and further steps to secure themselves or indemnify themselves against any official defalcations of the said Blackman as assessor and collector as aforesaid, and did rely wholly upon the action of the said city council for their indemnification and release as aforesaid; and defendants aver that had it not been for the action of the said city council in cancelling and causing to be cancelled the said bond as aforesaid, and accepting the said new bond in lieu thereof as aforesaid, they could and would have indemnified themselves against any and all defalcations and deficits the said Blackman had made or should make in and about the collecting and accounting for the taxes to the said city. Wherefore they say that said plaintiff is estopped from claiming or asserting any liability on the bond herein sued on against these defendants, whereof they pray judgment."

The court sustained plaintiff's exceptions to each of these pleas.

We do not think that the court committed an error in sustaining the exceptions. The authority of the city council to require of the assessor and collector a new bond is found in Article 366 of the Revised Statutes. The authority is there given the city council to require of him a new bond "whenever in their opinion the existing bond is insufficient." Nothing is anywhere said about cancelling the old bond. The evident intention of the law is to leave it in full force as a security for acts done before it is superseded by a new obligation, and for the new one to provide security only for the future. The city council is without jurisdiction to release the obligors in the first bond from any obligation that attaches to them while it is in force, and we think that the expression contained in the order of the council that the old bond was "cancelled" must be held to apply to future and not past responsibility. The sureties must be charged with knowledge of the want of power in

the council to agree to their release from liabilities already incurred, and can not be discharged by proving that they trusted to an agreement that the council could not make.

The court charged the jury as follows:

"I instruct you that the bond read in evidence by the plaintiff, signed by J. W. Blackman and the defendants herein, dated 21st day of April, 1885, entitles the plaintiff to recover from the defendants and each of them whatever amount of taxes had been collected by Blackman from the day of its date to and including June 3, 1885, and had not been on said June 3, 1885, paid over to the plaintiff, not to exceed the sum claimed by plaintiff, to-wit, $8029.07.

"On the execution and acceptance of said new bond the defendants in this case ceased to be liable for any sums of money collected by Blackman after its acceptance by the plaintiff, but they remain liable for every dollar collected by him up to that time which had not up to that day and on that day been paid over to the plaintiff.

"In ascertaining the defendants' liability, you will find from the evidence before you how much Blackman owed the plaintiff on the 3d day of June, 1885, charging him with all the money collected on that day in addition to that before collected, and giving him credit by all payments made up to and including that day. After ascertaining from the evidence the exact amount due by Blackman to the plaintiff at the close of the 3d day of June, 1885, if anything, you will then find from the evidence how much money he paid over to the plaintiff after the 3d day of June, 1885; and if the amount paid by him to plaintiff after June 3 is greater than the amount collected by him after June 3, you will ascertain the difference and subtract that difference from the whole amount found by you to be due by Blackman to the plaintiff on June 3, 1885, if anything; then from this remainder, if any, you will deduct $139.59 as commission due said Blackman for collecting same, and find a verdict for the plaintiff for the balance, not to exceed, however, the sum of $8029.07, with interest thereon at the rate of 8 per cent per annum from the 1st day of January, 1886, to date."

Appellants requested, but the court refused to give, the following charge: "The jury are charged that in no event can they find a verdict against defendants for an amount larger than the smallest amount that the evidence shows Blackman to have been indebted to plaintiff at any time subsequent to June 3, 1885, and prior to his resignation, with interest thereon from January 1, 1886."

The assessor and collector was required "at the expiration of every week to pay to the treasurer all money by him collected." Rev. Stats., art. 336. To whatever extent he had failed to discharge that duty he was in default when he gave the new bond, and the sureties upon the first bond were responsible for it. Of course such responsibility could be diminished or entirely removed by payments subsequently made by

the officer or his sureties. If payments were made when he was acting under the new bond, in the absence of evidence showing the source from which the money came the presumption would have been properly indulged that they were the proceeds of current collections, so far as such collections had been then made, and the payments would have been properly appropriated to the discharge of the account for which the sureties on the new bond were liable. If the evidence shows that the money paid was not derived from collections made after the new bond was executed, the law will not compel its appropriation in whole or in part to the account subsequent to its date, unless that may be done consistently with the general rules applicable to the appropriation of payments. In any view of the case, the least amount that the collector was behind with the city after the 3d day of June, 1885, is the greatest amount for which the sureties on the first bond can be now held responsible.

The testimony of the auditor shows that on the 23d day of June the collector had by payments reduced his whole indebtedness to a sum considerably less than the amount for which the judgment was rendered.

The charge above referred to requested upon that issue should have been given. It contained a correct proposition of law not expressed in the charges given.

It is contended by the appellees that the testimony of the auditor as to the amount shown by his report to have been due on the 23d day of June is contrary to the evidence of the report itself, and that the report in fact shows that the amount due at that time was greater than the verdict, instead of being less.

We have not been able to fully understand the application of figures of the auditor or to make his report exactly correspond with his evidence, but the statement of the figures by appellee is manifestly incorrect; and without being fully informed in every particular by the auditor's report or other evidence in the record, we are satisfied that the report does show that the judgment is for an amount somewhat greater than was the deficit that existed on the 23d day of June, 1885. Even if this was not apparent, in the absence of our being able to see exactly what was the true state of the account on that date we would assume that the auditor understood his own report and testified correctly about it.

What we have said will, we think, sufficiently indicate our opinion upon all of the issues presented by the brief of appellants without our referring in detail to all of their assignments of error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 18, 1891.