# Pittsburg, Appellant, *v.* Rhodes, et al.

*Banks and banking—Depositories—Bonds—Discharge of sureties.*

Where a bank is selected as a city depository for a term of years, and executes a bond to secure the safe custody of all moneys deposited with it, and at the expiration of the term it executes a new bond with different sureties for a new term, and on the same day enters the exact balance to the city's credit in the individual transfer ledger as a deposit by the city, and the city thereafter adds to and checks against this balance in amounts largely exceeding such balance, the sureties on the first bond are discharged of liability for a default occurring during the second term.

Argued Nov. 2, 1910. Appeal, No. 198, Oct. T., 1910, by plaintiff, from order of C. P. No. 2, Allegheny Co., July T., 1908, No. 174, opening judgment entered d. s. b. for plaintiff in case of City of Pittsburg v. Joshua Rhodes, now W. B. Rhodes and Mary H. Rhodes, executors, et al. Before Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ.   Affirmed.

Rule to open judgment and stay execution on a surety bond. Before Shafer, J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in making absolute rule to open judgment.

*Charles A. O'Brien,* with him *A. M. Imbrie,* for appellant, cited: Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Shaeffer, 59 Pa. 350; Harrisburg v. Guiles, 192 Pa. 191; Lancaster County v. Hershey, 205 Pa. 343; McCracken v. The Church, 111 Pa. 106; Leas v. Hafer, 39 Pa. Superior Ct. 160; Com. v. Caldwell, 224 Pa. 103.

*William Watson Smith,* with him *George B. Gordon,* for W. B. Rhodes and Mary H. Rhodes, executors of Joshua Rhodes, deceased, cited: Clayton's Case, 1 Meri-

vale, 572; McKee's Executors v. Com., 2 Grant, 23; Bodenham v. Purchas, 2 Barnewall & Alderson, 39; United States v. Wardwell, 5 Mason, 82.

PER CURIAM, January 3, 1911:

The Allegheny National Bank was selected as one of the depositories of the city of Pittsburg for a term of four years and two months, beginning December 1, 1900, and ending January 31, 1905. To secure the safe custody of all moneys to be deposited with it during that period, the bank executed its bond to the city, upon which Joshua Rhodes, deceased, was one of the sureties. On January 31, 1905,—the day the term of the depository expired—there was on deposit with it to the credit of the city a balance of $1,014,635.32. The bank was rechosen as one of the city's depositories, and the balance to its credit at the close of business on January 31, 1905, was entered by the bank in the individual transfer ledger on February 1, 1905, as a deposit to the credit of the city. For the new term of the depository, beginning February 1, 1905, and to end January 31, 1909, it gave a new bond to the city upon which Rhodes was not a surety. Between February 1, 1905, and May 16, 1908,—the day the bank closed its doors—the city deposited with it, in addition to the $1,014,635.32 credited to it on February 1, 1905, $22,401,147.86 and during that period checked out $21,868,829.24. On March 17, 1908, the balance to its credit was reduced to $310,515.93. On May 18, 1908, the city of Pittsburg entered judgment against the sureties on the bond covering the period between December 1, 1900, and January 31, 1905, and from the order of the court opening it the city has appealed.

If on February 1, 1905, the city had drawn its check for the whole amount of the balance to its credit in the bank at the close of business the day before, and, upon receiving cash in payment of the check, had redeposited the money with the bank, just starting on a second or new term as a depository, the sureties on the present bond

would unquestionably have been fully discharged, for the city would have received all of the money due it from the bank at the expiration of the first period, for which alone the sureties were bound. The condition of their bond would have been performed. This, in effect, is what was done. The bank, on February 1, 1905, formally entered as a deposit to the credit of the city the exact balance due it at the close of business the day before, and the city, having accepted this as a deposit to its credit, immediately began to check against it. From February 1, 1905, to May 16, 1908, as already stated, it made additional deposits amounting to more than $22,000,000, and checked out on its account during the depository's second period more than $21,000,000. In thus checking against its account it drew out what it had on deposit on February 1, 1905. The learned judge below correctly held that there is nothing in the case to take it out of the ordinary rule of the application of payments as stated in McKee's Executors v. Com., 2 Grant, 23, and which applies to a bank as well as to others: Clayton's Case, 1 Merivale, 572. The order of the court opening the judgment is affirmed with costs to the appellees.