**CITY NAT. BANK et al. v. EASTLAND COUNTY.** (No. 472.)

Court of Civil Appeals of Texas. Eastland. Nov. 2, 1928.

Rehearing Denied Jan. 4, 1929.

Gib Callaway, of Brownwood, Allen D. Dabney, of Eastland, Thompson, Knight, Baker & Harris and Seay, Seay, Malone & Lipscomb, all of Dallas, Turner, Seaberry & Springer, of Eastland, William Flippen and Beall, Worsham, Rollins, Burford & Ryburn, all of Dallas, John T. Suggs, of Denison, and Albert B. Hall, of Dallas, for appellants.

J. R. Stubblefield, Chas. C. Robey, and J. Frank Sparks, all of Eastland, and B. W. Patterson, of Cisco, for appellee.

HICKMAN, C. J. In February, 1919, Eastland county designated the American National Bank of Eastland as county depository for the statutory two years' term. In June, 1920, the depository notified the commissioners' court that it did not desire to act as depository for a special fund which had been derived by the county from the sale of good road bonds; whereupon, the City National Bank of Eastland was designated as a depository of those special funds. By the contract between the City National Bank and the county 4.52 per cent. interest on daily balances was to be paid to the county. Upon being elected special depository, the City National Bank executed to the county five surety bonds, aggregating in amount $330,000. The names of these sureties and the respective amounts of the bonds signed by each were: Southern Surety Company, $30,000; National Surety Company, $100,000; Fidelity & Deposit Company of Maryland, $40,000, and $100,000, respectively, on the two bonds executed by it, and U. S. Fidelity & Guaranty Company, $60,000. These sureties will be hereinafter referred to as corporate sureties, and the bonds executed by them will be collectively referred to as bond No. 1.

In November, 1920, the assets of the City National Bank were taken over by the Security State Bank & Trust Company, and all of its liabilities were assumed by the latter. At that time Eastland county had on deposit with the City National Bank, according to its books, $262,436.55. This amount of credit was brought forward in the books of the Security State Bank & Trust Company after it took over the assets of the other bank. No official recognition of this change of special depositories was made by the county, but the county authorities proceeded to deal with the Security Bank, just as they had with the City Bank, depositing therein proceeds from the sale of road bonds, receiving monthly statements of the condition of the county's account, and accepting credit each month for the amount of interest due on daily balances, in accordance with the terms of the contract between the county and the City Bank. This arrangement continued, with the American National Bank remaining as the general county depository, until February, 1921, when, under the terms of the statute, a new depository for the ensuing two years was designated. Bids were advertised for, and in due course the Security State Bank & Trust Company was designated as county depository, on a contract to pay 5.65 per cent. interest on daily balances. As such depository it delivered to the county its statutory bond in the sum of $750,000, with the following sureties: S. D. Young, Edwin Hobby, D. E. Waggoner, Geo. W. Riddle, W. H. Gaston, Clarence Linz, Joe Burkett, and Allen D. Dabney. This bond was approved by the commissioners' court on April 13, 1921. It will be hereinafter referred to as bond No. 2.

On April 14, 1921, S. D. Young applied to the county to be relieved as a bondsman, and the Security Bank filed with the county a bond in the same amount as bond No. 2, and in the exact language thereof, with the following sureties: C. T. Barringer, J. S. Mullen, R. A. Hodges, M. H. Smith, Edwin Hobby, R. L. Hunt, Joe Burkett, and Allen D. Dabney. This bond will hereinafter be referred to as bond No. 3. It was approved by an order dated May 30, 1921.

On July 12th of the same year the commissioners' court caused a letter to be written by the county judge to the depository bank, notifying it that its bond was insufficient, and calling upon it to tender to the county a good and sufficient bond, and also notifying it that the funds belonging to the county would be immediately withdrawn, unless the same were placed in a noninterest-bearing account, protected by the state guaranty fund. On the same day the bank, through its vice president, R. L. Hunt, replied to this communication, advising the county that it would secure a bond which would be deemed adequate, and that, in the meantime, the funds of the county had been placed on a noninterest-bearing basis, so as to be protected by the depositors' guaranty fund.

On August 2, 1921, the Security Bank closed its doors, and its affairs were taken over by the commissioner of insurance and banking for liquidation, the bank being then insolvent. On that date there was on deposit with said bank to the credit of the county $556,535.15. That sum included various county funds, but did not include any school funds. Thereafter, the county presented to the banking commissioner two

**666**

claims, one as a noninterest-bearing, unsecured depositor, and the other as a secured depositor.

In December, 1921, Eastland county instituted a suit against its depository, the commissioner of insurance and banking, and J. R. Burnett, special agent of the commissioner, to establish as a noninterest-bearing, unsecured deposit, the funds on deposit in said bank, and to have same classified as claims entitled to be paid out of the depositor's guaranty fund. In the trial court the county was successful in procuring a decree establishing its claim as unsecured, noninterest-bearing and, as such, protected by the guaranty fund, and directing its payment out of said fund. Upon appeal from that judgment, the Court of Civil Appeals held that no part of the county's claim was properly chargeable to the guaranty fund. See Chapman v. Eastland County (Tex. Civ. App.) 260 S. W. 889. A writ of error was granted in that cause by the Supreme Court upon the application of Eastland county, and, upon hearing in that court, judgment was rendered that the sum of $85,552.83, deposited by the county after the attempted transfer of July 12th, was a general deposit protected by the guaranty fund, and such fund was made liable therefor. The county collected its judgment against the guaranty fund, and has since collected a portion of its judgment against the depository bank out of the general assets of the bank.

The instant suit was instituted by the county against the City National Bank, the Security State Bank & Trust Company, Chas. O. Austin, commissioner of banking of the state of Texas, and the several sureties on bonds Nos. 1, 2, and 3 named above. The purpose of the suit was to collect from the sureties and the City National Bank the amount remaining uncollected on its judgment against the Security Bank obtained in the former suit.

The case was tried before the court without the aid of a jury, resulting in a decree that the Security State Bank & Trust Company was indebted to the county in the sum of $355,587.88, with interest thereon from August 3, 1921, at the rate of 5.65 per cent. per annum. Judgment was rendered against the sureties on bond No. 3 jointly and severally for this amount. Judgment was rendered against the sureties on bond No. 2 jointly and severally for $175,336.63, with interest from date of judgment at the rate of 6 per cent. per annum. Judgment was rendered against the City National Bank for the sum of $187,141.01, with interest from August 3, 1921, at the rate of 4.52 per cent. per annum. Judgment against the respective corporate sureties on bond No. 1 was for the following amounts: U. S. Fidelity & Guaranty Company, $60,000; National Surety. Company, $100,000; Southern Surety Company, $30,000; Fidelity & Deposit Company of Maryland, $140,000. Each of these judgments against the corporate sureties was decreed to bear interest at the rate of 4.52 per cent. except the judgment against the National Surety Company, interest on which was 6 per cent. per annum.

Before discussing the several defenses urged we call attention to the fact that the total judgment rendered against the sureties on bond No. 1 exceeded by more than $100,000 the amount of the judgment rendered against their principal, the City National Bank. Obviously that was erroneous. It will also be noted that subrogation was granted to the sureties in the inverse order of their bonds; that is to say, the sureties on bond No. 3 were granted subrogation against the sureties on bond No. 2, and those on bond No. 2 were likewise granted subrogation against those on bond No. 1. That was erroneous. There was also error in decreeing that judgment against one of the corporate sureties should bear a different interest rate to that borne by the judgments against the others. We call attention to these errors for the guidance of the court upon the next trial of this cause.

Considering first the liability of the corporate sureties who executed bond No. 1 for the City National Bank as a depository for the special road funds, it is disclosed by the conclusions of law and the judgment that the theory upon which judgment was rendered against them was that, when the Security Bank took over the assets of the City Bank on November 24, 1920, there was on hand in cash and on deposit in other banks, to the credit of the City Bank, a sum of money less than the balance owing by the bank to the county on that date. It was, therefore, the opinion of the trial court that the county was entitled to judgment against the City Bank for an amount equal to the difference between its cash on hand and in other banks and its indebtedness to the county, less certain deductions, on account of a lower balance due the county at a later date. This presents the question of whether the obligation of the bank was literally to keep in hand at all times sufficient cash to pay the county the full amount of its deposit. The particular condition of the bond, upon which it is claimed that this duty rested upon the bank, reads as follows: "That all funds of the county shall be faithfully kept by said depository and accounted for according to law."

This condition must be construed in the light of the intent of the parties and the purpose of the depository contract. Were the contract one of bailment, this theory might be upheld, but, since the contract was one for bank deposits, the relation between the parties created by the transactions was that of debtor and creditor. The money, when

deposited, became the property of the bank, and its obligation to pay interest to the depository on daily balances negatives, within itself, any obligation to keep the funds of the depositor on hand in actual cash at all times. To hold otherwise would deprive counties from procuring interest on their funds and bring about a condition necessitating their paying depositories for their services in safe-keeping the funds as bailees or trustees. Liability cannot be predicated against the bank and its corporate sureties on this theory. New Liberty Common School District v. M. & P. Bank (Tex. Civ. App.) 273 S. W. 330 (error refused); Henry County v. Salmon, 201 Mo. 136, 100 S. W. 20; Manhattan Co. v. Blake, 148 U. S. 412, 13 S. Ct. 640, 37 L. Ed. 504; Board of Com'rs of Redwood Falls v. Citizens Bank, 67 Minn. 236, 69 N. W. 912.

■ One of the defenses urged by the corporate sureties was that the county had received payment on all obligations for which they ever became liable. This contention is sustained. It is elementary that the liability of these sureties can, at most, be extended no further than for the payment to the county of all moneys deposited by the county in the City National Bank. As to any funds deposited with the Security State Bank, these sureties assumed no obligation, and cannot be held responsible, for their liability must be measured by the contract which they signed, and cannot be extended by implication to cover any other and different contract. The amount on deposit in the City Bank on the day its assets were taken over by the Security Bank was $262,436.55. Thereafter the county continued to make deposits with the Security Bank and to draw vouchers against said bank. The trial court found that by the 16th day of March, 1921, the county had withdrawn, in the regular course of business, sufficient funds to total the amount of such deposit. Thereafter the county continued to withdraw funds from the bank, until it closed for liquidation on August 2d. The total amount withdrawn by the county from said funds greatly exceeded the amount on deposit by the county at the time the City Bank turned over the account to the Security Bank.

It is a well-established rule that, when payments are made upon a current account by a debtor to a creditor and no application is made by either, the law will apply the payments according to priority of time, liquidating the oldest items first. McLendon Hdw. Co. v. Black (Tex. Civ. App.) 264 S. W. 1011; International Shoe Co. v. Kaufman (Tex. Civ. App.) 270 S. W. 1109; Friedman-Shelby Shoe Co. v. Davidson (Tex. Civ. App.) 189 S. W. 1029.

No reason can be perceived why this rule should not apply between a bank and its depositor. The relation, as stated, is that of debtor and creditor. Each deposit made in a bank creates a new item of indebtedness due by the bank to the depositor, and each check or voucher cashed by the bank constitutes a payment by the debtor on its account, consisting of various items owing to the creditor. Sunflower County v. Drew, 136 Miss. 191, 101 So. 192; Henry County v. Salmon, 201 Mo. 136, 100 S. W. 21; Freemont County v. Freemont Bank, 138 Iowa, 167, 115 N. W. 925; City of Pittsburgh v. Rhodes, 230 Pa. 397, 79 A. 634; Board of Com'rs v. Citizens' Bank, 67 Minn. 236, 69 N. W. 912; State v. U. S. F. & G. Co., 81 Kan. 660, 106 P. 1040, 26 L. R. A. (N. S.) 865.

The old English case of Devaynes v. Noble, Clayton's Case, 1 Mirevale 572, to which we have not access, but from which appellant Southern Surety Company quotes in its brief, assigns a very interesting and convincing reason, for the application of this rule to bank deposits, in this language: "A man's banker breaks, owing him, on the whole account, a balance of £1000. It would surprise one to hear the customer say, 'I have been fortunate enough to draw out all that I paid in during the last four years; but there is £1000, which I paid in five years ago, that I hold myself never to have drawn out; and, therefore, if I can find any body who was answerable for the debts of the banking-house, such as they stood five years ago, I have a right to say that it is that specific sum which is still due to me, and not the £1000 that I paid in last week.' * * * What boundary would there be to this method of re-moulding an account? If the interest of the creditor required it, he might just as well go still further back, and arbitrarily single out any balance, as it stood at any time, and say, it is the identical balance of that day which still remains due to him."

The appellee, Eastland county, obtained the benefits of this rule in its suit above referred to against the banking commissioner, in which it was sought to establish the entire amount of its deposits as a claim against the guaranty fund. The Supreme Court permitted judgment to stand in favor of the county against the guaranty fund for the entire amount of all deposits made by the county after July 12, 1921. The record in the instant case discloses that many withdrawals were made by the county during that same period. Had such withdrawals been charged against the deposit for that period, the judgment of the county against the guaranty fund would have been for a much less sum than that rendered. The effect of that judgment was to apply the withdrawals during that period to prior existing items of indebtedness.

Our decision on this question is not in anywise in conflict with the decision of the Supreme Court in the cases of State v. Middleton, 57 Tex. 185, and Newcomer v. State, 77 Tex. 286, 13 S. W. 1040. In those cases it

was held that the rule of application of payments did not apply in the case of a public official handling public funds for more than one term. The distinction between the public official who is intrusted with tax money and a bank in which is deposited public funds is readily discernible. A public official is a trustee, and is bound to keep the funds intrusted to him intact. The relation of debtor and creditor does not exist. Should he default during one term of his office, it would not be lawful for him to make up such default during the next term of office by the use of public funds coming to him during his second term. Since he has no right thus to appropriate public funds, the law will not make the appropriation for him. The law makes application of payments only when the parties had the right to do so but failed to exercise the right. Our conclusion upon this defense of the corporate sureties is that, even though it be conceded that the City National Bank defaulted to the full amount of the deposits of the county which it had on hand on November 24, 1920, still the county has no cause of action against it and its sureties therefor, because full compensation has been made for such default.

■ It has been suggested that the corporate sureties were liable for defaults of the Security State Bank on the theory that it was but a continuation of the City National Bank with the same identity, bringing this case within the rule applied in the cases of Cooper Grocery Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338; New Liberty Common School Dist. v. M. & P. Bank (Tex. Civ. App.) 273 S. W. 330; and Goodwin v. Abilene State Bank (Tex. Civ. App.) 294 S. W. 883. The record does not support this suggestion. The City National Bank was still in existence at the trial of this cause, and judgment was rendered against it. The facts disprove the continued existence of that bank in the name of the Security State Bank & Trust Company.

■ Another defense of the corporate sureties will be noticed. They were sureties for the depository of a special fund only. On February 14, 1921, the Security Bank was elected county depository. Prior to that time that bank had been acting as a special depository, in accordance with the terms of the contract with the City Bank, which it assumed. When a new county depository is elected under the provisions of law, and a bond as such depository is tendered and accepted, the liability of sureties on the bond of the prior depository ceases, and this notwithstanding the same bank may be re-elected. New Liberty Common School Dist. v. M. & P. Bank (Tex. Civ. App.) 273 S. W. 330; Board of Comrs. v. Lake State Bank, 124 Kan. 372, 260 P. 630; Fidelity & Deposit Co. of Md. v. Wilkinson, Co., 109 Miss. 879, 69 So. 865.

Even though the corporate sureties were liable for deposits in the Security Bank during the period it was acting as depository for the special fund, such liability ceased when the bank was elected depository for the regular term, and furnished a new bond acceptable to the proper authorities. The contract between the county and its newly selected depository was a different contract from that with its special depository, for which the sureties for the latter never became liable, and cannot, therefore, be held.

■ Still another defense urged must be sustained. The record discloses that the entire balance owing by the bank as special depository to the county on February 14, 1921, the date this bank became the regular county depository, was later paid in full by applying the payments as above directed.

Other defenses are urged by the corporate sureties; but, as the ones mentioned effectually dispose of the case as against them, it becomes unnecessary to discuss this phase of the case further.

We next consider those defenses urged by the sureties on bond No. 2, which apply to them alone and not to them jointly with the sureties on bond No. 3. The second bond was dated February 14, 1921, and was the regular statutory county depository bond furnished by the Security State Bank & Trust Company to Eastland county after the selection by said county of said bank as its depository for the two-year period beginning on February 14, 1921. The bond recites upon its face that it is made for the entire two-year term of the depository. It is conditioned as follows: "The conditions of the above obligation are such that if the above named principal, the said Security State Bank & Trust Company of Eastland, Texas, which has been designated as County Depository of said County of Eastland as aforesaid, shall faithfully perform all the duties and obligations devolving by law upon said depository, and shall pay upon presentation all checks drawn upon said depository by the county treasurer of said County of Eastland, and that said county fund shall be faithfully kept by said depository and accounted for according to law and that any suits arising thereon shall be tried in said Eastland County, and shall in every respect comply with all the requirements of said acts of said Legislature and shall perform each and all of the conditions contained in, and discharge all the duties imposed by said acts, then this obligation to become void; otherwise to remain in full force and effect."

On May 30, 1921, the commissioners' court entered the following order: "Whereupon S. D. Young applied to the court to be relieved as a bondsman on the bond of the Security State Bank & Trust Company, and said application was heard and said bank was ordered to file a new bond. Whereupon said

bank filed a bond signed by J. S. Mullen et al., and on motion duly made, said bond was in all things approved as the county depository bond of the Security State Bank & Trust Company, as said bond does appear below."

The order then copies in full the bond of J. S. Mullen et al., bearing date of April 14, 1921. This bond is in all respects identical with bond No. 2, except as to the names of the persons executing it as sureties.

It is the contention of the sureties on bond No. 2 that, by the acceptance and approval of bond No. 3, such bond became a substitute for bond No. 2, and no further liability existed on same. The statutes regulating depository bonds, in effect at the time these bonds were executed, consisted of articles 2440 to 2453, inclusive, of the Revised Civil Statutes of 1911, as amended by the Acts of the Legislature of 1917 (chapter 11). These statutes appear in Vernon's Complete Texas Statutes, 1920, articles 2440 to 2453, inclusive. These statutes provide, in article 2443, for the original bond of a county depository. Bond No. 2 in the instant case was such a bond. Article 2443a provides for an additional bond covering special funds. Bond No. 1 in the instant case was such a bond. Article 2451 provides for a new bond. Bond No. 3 in the instant case was such a bond. This article reads as follows: "If the commissioners' court shall at any time deem it necessary for the protection of the county, it may require any depository to execute a new bond; and, if said new bond be not filed within five days from the time of the service of a copy of said order upon said depository, the commissioners' court may proceed to the selection of another depository in the manner provided for the selection of a depository at the regular time for such selection."

■ We believe that by the language of this articles the Legislature clearly intended that such new bond, when approved by the proper authorities, should become a substitute for the original bond. Loyd v. City of Ft. Worth, 82 Tex. 249, 17 S. W. 612.

■ In this case the order indicates that the reason for requiring a new bond was the desire on the part of a surety to be relieved from liability. There is no provision of law for relieving a surety on his own application. But, since the order does not negative the fact that the commissioners' court deemed it necessary for the protection of the county to require a new bond, and since the order is not attacked by the pleadings and evidence, we must presume that the officers acted lawfully, and not merely to accommodate the surety.

■ But, there is no provision whatever in the statute with regard to the approval of the new bond. That requirement, if it exists, must be arrived at by implications and intendments. Certainly the Legislature did not intend to make certain requirements

governing an original bond and at the same time intend that another bond should be substituted therefor, with less requirements. In the case of an original bond it is provided in article 2443 that same is to be approved by the commissioners' court. In the next article, 2444, it is provided that: "As soon as said bond be given and approved by the commissioners' court, and the State Comptroller of Public Accounts, an order shall be made and entered upon the minutes of said court designating such banking corporation, association, or individual banker, as a depository of the funds of said county."

We are required to give some meaning to this provision of article 2444, and our construction thereof is that it added a safeguard to public funds by providing for the approval of the depository bond by the comptroller of public accounts before an order could be entered designating a depository.

The record is silent in this case on the question of whether the comptroller of public accounts approved bond No. 3. The obligation of the bondsmen on bond No. 2 was a continuing one during the term of the depository, and the commissioners' court was without any power to relieve such bondsmen from liability during such term, in the absence of statutory authority therefor. When the bondsmen on bond No. 2 sought relief from their obligations on the ground that bond No. 3 had been substituted therefor, the burden rested upon them to show that each and every step prescribed by the statute for the execution and approval of original bonds was complied with in the execution and approval of bond No. 3. State v. Wells, 61 Tex. 562; Finch v. State, 71 Tex. 52, 9 S. W. 85; Taylor v. Taylor, 66 W. Va. 238, 66 S. E. 690, 19 Ann. Cas. 414; Commonwealth v. Caldwell, 224 Pa. 103, 73 A. 219; Clark v. Am. Surety Co., 171 Ill. 235, 49 N. E. 481; Kasper v. People, 230 Ill. 342, 82 N. E. 816. The case of State v. Wells, supra, involved the very question here under review, and supports the rule above announced.

Upon a retrial of this cause, should the sureties on bond No. 2 be unable to show that bond No. 3 was approved by the comptroller of public accounts, the trial court should hold that the liability of sureties on bond No. 2 did not cease when the commissioners' court approved bond No. 3. Should such proof be made, then the sureties on bond No. 2 should prevail, unless it is shown that a default occurred prior to the approval of bond No. 3, in which event the sureties on bond No. 2 would be liable to the extent of such default, less any payments made thereon by the bank under the doctrine of the application of payments above discussed, unless such sureties should prevail under some other defense.

■ The record is likewise silent on the question of whether the comptroller of public accounts approved bond No. 2, and

the question may arise upon retrial as to the liability of the sureties on this bond, in the event proof is made that neither bond was approved by the comptroller. These questions are disposed of by the established rule that provisions of statutes with reference to the approval of bonds are made for the protection of public funds and not for the benefit of the sureties, and a surety who executes a bond and delivers it to the proper authorities, and upon the faith of which there is delivered to the principal public funds, cannot defend against liability on the bond on the ground that same had never been approved. If, therefore, bond No. 3 was never approved by the comptroller, the sureties on bond No. 2 remained liable for the defaults of the bank. Wright v. Leath, 24 Tex. 24; Poer v. Brown, 24 Tex. 34; Harper v. Golden (Tex. Civ. App.) 39 S. W. 623; Munoz v. Brassel (Tex. Civ. App.) 108 S. W. 417; Morris County Nat. Bank v. Parrish (Tex. Civ. App.) 207 S. W. 939; 9 C. J. 25.

But the question arises: What liability, if any, exists against the sureties on bond No. 3, if that bond never became a substitute for bond No. 2? Did they incur cumulative liability on the ground that they cannot take advantage of a failure of the proper authorities to approve their bond? We think not. The only authority for a county to demand a new bond during the term of its depository (except a bond for a special fund, not here under consideration) is contained in article 2451 above quoted. Such new bond must be held to be either a substitute bond or an additional bond. We have held it to be a substitute bond. If it is not sufficient as such, then it has no effect. We cannot presume that the county deposited funds with the bank on the faith of an additional bond, when it had authority to require only a substitute bond.

A serious question has been presented by the manner in which the county pleaded its case in the trial court. In connection with its allegations of liability on the part of the sureties on bond No. 3, the allegation is made that such bond was duly approved and filed as required by law. The effect of such allegation was to relieve the sureties on bond No. 2 from the necessity of making proof of that fact as a condition precedent to their discharge. But judgment cannot be rendered in favor of the sureties on bond No. 2 on this account, because the pleading does not allege when same was approved. The record discloses when the commissioners' court approved it, but is silent as to any approval by the comptroller. If his approval was after default, the sureties on bond No. 2 were not discharged. On another trial this point should be developed under appropriate pleadings and proof.

The record in this case discloses that collections had been made by the county on its judgment against the Security Bank obtained in its suit against such bank and the commissioner of banking and insurance above referred to. It is the claim of the sureties on the second bond that such amounts as had been collected on this judgment constitute payments on the account owing to the county by the bank, and that, therefore, such sums should be applied to the oldest items of the account in the same manner as the payments made before judgment. We cannot agree with this contention. Payments on a judgment are not payments on the account which was merged into the judgment. The judgment, and not the account, evidences the indebtedness of the bank to the county, and there are no different items in the judgment. The equitable rule is that such payments should be credited pro rata, so that the different sets of sureties may receive credit in proportion to their respective obligations. Bostick v. Jacobs, 141 Ala. 344, 32 So. 136, 91 Am. St. Rep. 36; Kyle v. Chattahoochee Nat. Bank, 96 Ga. 693, 24 S. E. 149; Orleans County Nat. Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775; 30 Cyc. 1228.

We now consider the defenses urged by the sureties on bond No. 3. The same defenses are urged by all the other sureties, but constitute the only defenses of the last bondsmen. One of these defenses is that the county's suit against the bank and the commissioner, in which it sought to establish its entire claim as a noninterest-bearing, unsecured deposit, and the pursuit of that claim to final judgment in the Supreme Court constituted an election of remedies barring the county from maintaining this suit, based upon the contention that the account was secured and interest bearing. It is difficult to reconcile all of the decisions on this mooted question. Under the holdings of the federal courts the contention would probably be sustained. But we believe that, under the decisions of our state, and most of the other states, the rule applicable to this case is clearly and accurately stated in 9 R. C. L. p. 962, § 9, in this language; "It is a well-established rule that the choice of a fancied remedy that never existed and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, though the first action proceeds to judgment, does not preclude the plaintiff from thereafter invoking the proper remedy."

In the instant case the county never had two remedies on any portion of its deposit in the bank. On its claim for the money deposited as an unsecured, noninterest-bearing deposit after July 12th, no right of action ever existed against appellants, and likewise no right of action ever existed against the guaranty fund on the county's claim based

upon that portion of the deposit declared upon in this suit, which was never actually placed in the unsecured, noninterest-bearing class. The contract upon which the guaranty fund was liable was a different contract to that upon which the sureties could be liable. The county undertook to protect itself by filing two claims with the commissioner, one as a secured, and the other as an unsecured depositor. To have sued the commissioner and the sureties in the same case, alleging alternate liability, might have been an improper joinder of parties and causes of actions. It elected to sue the commissioner, but, before that suit was finally disposed of in the Supreme Court, the instant suit was filed. It would be inequitable to visit upon the county the consequences of an election of remedies under such circumstances.

■ But, it is insisted that the county actually obtained partial relief on its former suit. We do not so construe the record. It did obtain complete relief on its claim for the money deposited after July 12th, and it has collected a portion of its judgment obtained in that suit against the bank, but these latter collections were not obtained upon any judgment against the banking commissioner, but came out of the general assets of the bank. The county had the right to sue the bank without joining the sureties therein, and any collections made upon a judgment against the bank inured to the benefit of the sureties, but could not be construed as being in any sense collections on the judgment against the guaranty fund.

■ Another defense urged by all the appellants is that on July 12, 1921, a material change of contract was made between the bank and the county which ope rated to discharge the sureties. That such a change of contract will have that effect is elementary. But a contract which is not valid and binding between the principal and the obligee does not affect a discharge of the sureties. Claiborne v. Birge, 42 Tex. 98. The change of contract relied upon in this case consisted of an agreement to transfer the county's deposit from a secured, interest-bearing deposit to an unsecured, noninterest-bearing deposit, as detailed above. The Supreme Court has held in Eastland County v. Chapman, 276 S. W. 654, that the bank did not, in fact, effectuate such change of status. There was, therefore, no real change in that particular. But, there was an agreement that the deposit should not bear any interest after July 12th. If that was a valid, enforceable agreement, it probably had the effect of discharging the sureties, provided no prior default had occurred. However, we think this contract for releasing the bank from its obligation to pay interest was absolutely void. Article 3, § 55, of our Constitution forbids such a remission. Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419. Our conclusion on this defense is that

the contract relied upon by the sureties to work their discharge was void, and that it did not, therefore, have the effect of discharging them.

Our views on the question discussed in the next preceding paragraph renders it unnecessary for us to discuss the question suggested by appellee that the bank defaulted on July 12th when it failed to make the change of deposit demanded in the county's order and letter of that date.

■ The several appellants interposed in the court below pleas of misjoinder of parties and causes of action, which were overruled by the trial court. The county had the statutory right to sue the bondsmen on bonds Nos. 2 and 3 in the same action, they being sureties for the same depository (article 1989, R. S. 1925), and since we have held that the county had no cause of action whatever against the corporate sureties, and since we are rendering judgment herein in their favor, the error, if any, in joining them and their principal in the suit, becomes harmless as to the other appellants.

It is our order that the judgment of the trial court in favor of the county against the corporate sureties on bond No. 1 be reversed and judgment here rendered in favor of such sureties; that, as against the defendants not appealing, the judgment be not disturbed; that in all other respects the judgment of the trial court be reversed, and the cause remanded for a new trial in accordance with this opinion.

Reversed and rendered in part; reversed and remanded in part.

### On Motions for Rehearing.

■ The appellee and all of the appellants, except Joe Burkett and the corporate sureties, have filed motions for rehearing. It is insisted by appellee that we erred in our original holding that Eastland county had received payment for all funds for which the corporate sureties ever became liable, and in our application of the payments as was done in the original opinion. The claim is that, when the City National Bank delivered its assets to the Security State Bank & Trust Company, including the deposit of Eastland county then in said bank, such action constituted a default on the part of the City National Bank; that the obligation of the Security State Bank to account for the funds actually deposited therein by the county after it took over the City National Bank was a primary and independent obligation, and its obligation to pay the amount owing to the county by virtue of the claimed default of the City National Bank was assumed and secondary; and that, therefore, it would be inequitable to apply the payments toward the liquidation of the secondary liability in preference to the primary liability. As stated in the original

672

opinion, Eastland county acquiesced in the act of the City National Bank in delivering the county's special deposits to the Security State Bank & Trust Company with full knowledge thereof, and was paid interest on daily balances based upon the fact that said Security Bank had actually received the county's money from the City National Bank, and generally continued to deal with the bank by making deposits therein and drawing vouchers thereon. It, therefore, seems clear to us that the county cannot now be heard to predicate any liability against the sureties for the City National Bank on the ground of such alleged default. But, conceding that appellee is correct in this contention, and that there was a default on the part of the City National Bank in November, 1920, and further conceding that, in the absence of an application of payments by the parties, the court would not be authorized to apply withdrawals made from the Security State Bank toward the liquidation of an obligation originally made by the City Bank and assumed by the Security Bank, still appellee's case against the corporate sureties is not strengthened.

In February, 1921, the Security State Bank was designated as the regular county depository, succeeding the American National Bank. Immediately thereafter all the funds of the county were deposited in said depository, including the funds which had gone into the City National Bank. The record does not show that actual cash was taken from the special account in the Security Bank and then delivered back in kind to the bank as a general depository, but the county was credited with the amount of the deposit on the books of its depository, which deposit was secured by a bond acceptable to the county. That transaction constituted a payment to the county depository of all the balance remaining of its special account. The county having thus received such payment, it is unimportant as to whom the City National Bank delivered that fund.

■■■ Further, the record discloses, upon a more careful examination thereof, that the parties themselves made application of the payments from the bank to the county. When the Security Bank became the general depository in February, 1921, all funds of the county were for a time placed in the same general account and vouchers drawn against such account. But, on April 22, 1921, a new account was opened in the depository, called the "Ed S. Pritchard special collection account." Practically all of the deposits made by the county after that date were placed in that special account. There were, after that date, two accounts, one being the general account, including the old money, and the other the special account, including only deposits made after April 22d. The county continued regularly to draw warrants against

the bank, and these warrants were all charged against the old account. At the close of business on June 21st, this old account, which included the money originally deposited in the City National Bank, had been reduced to $5,412.36. On the following day more than $13,000 was drawn from said account, which would have more than wiped out all of said balance but for the fact that on that day the Ed S. Pritchard special collection account was transferred to this general account. Whether the transaction was made at the beginning or at the close of the business of June 22d does not appear, but it does conclusively appear that the limit of liability of all corporate sureties was $5,412.36, and it also conclusively appears that the parties themselves made application of payments by charging the withdrawals against the oldest items. Since the parties so applied the payments, no application by the court is necessary, as courts make application of payments only when parties have failed to do so.

■■■ In a supplemental argument filed by appellee it is contended that the Security State Bank & Trust Company was but a continuation of the City National Bank, having the same identity, and that the corporate sureties were liable for funds deposited in said Security Bank under the holding of Cooper Grocery Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338, and other similar cases cited by us in our original opinion. It may be well doubted whether a banking corporation organized under the laws of the state of Texas could ever be a mere continuation of identity of a national bank so as to render the sureties of the national bank liable for the default of the state bank. But, conceding for the sake of considering this contention, that this view is correct, still appellee's case is not strengthened. If the Security Bank was but a continuation of the City Bank, then no default occurred when the funds were transferred from one to the other, and the sureties were certainly discharged when the new depository was elected in February, 1921, and the funds for which the corporate sureties were liable were delivered to such new depository after the county had approved the new depository bond.

We believe that under no theory could any liability be predicated against the corporate sureties, and adhere to our original judgment in their favor.

In a very forceful argument the appellants Linz, Young, and Waggoner present that we erred in our original opinion in holding in effect that the law requires that the comptroller approve a depository bond. We have given careful consideration to the arguments advanced in support of this contention, but, based upon the authorities cited in our original opinion, and believing that the construction of article 2444, insisted upon by said appellants, gives no effect what-

ever to the provision therein contained with reference to the approval of bonds by the comptroller, we overrule this contention and adhere to our original holding.

It is also contended that in our original opinion we gave too narrow effect to the pleadings with reference to the approval of bond No. 3, and that we should render judgment in this court in favor of the sureties on bond No. 2, on the theory that, under appellee's pleadings, the case should be considered as if the undisputed facts disclosed that the comptroller did approve such bond. We do not think this is a proper case in which to render a judgment in favor of these sureties. The case was tried below on a theory of liability entirely different to the theory upon which our original opinion was based. The fact of the approval by the comptroller was not considered as a material fact. It is the established rule by our Supreme Court that a case should be remanded rather than rendered, where it appears that same has not been fully developed or that justice will probably be better served by a remand. Even though there is no evidence whatever of probative value supporting the judgment, it is our duty to remand rather than to render, where justice may be better subserved thereby. Texas Employers' Insurance Association v. Herring (Tex. Com. App.) 280 S. W. 740; Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1043.

It is presented by appellants that our holding on the issue of the release of the sureties by a change in contract between the county and the depository on July 12th is in conflict with the holding of the Supreme Court in the case of Eastland County v. Chapman, 276 S. W. 654. We do not construe that opinion as deciding this question at all. In the instant case the trial court found that the bank did not change the county's deposit from a secured to an unsecured account. That was the basis of the judgment of the Supreme Court in the case of Eastland County v. Chapman, supra. But, it is insisted that the depositing of more than $85,000 in an unsecured account after July 12th constituted a change of contract between the county and its depository. This contention is based upon the assumption that there was a contract between the county and its depository, whereby the county agreed to place all of its funds in this secured deposit. We do not think such a contract ever existed. The law, as it then existed, required the county treasurer to deposit all funds in the depository bank, and any contract between the county and the depository, whereby it was agreed that the county treasurer would not obey the law, was clearly not a valid contract. But, regardless of the correctness of our view on the question of the legality of the contract, a further study of this question has convinced us that the defense of discharge of sureties by change of contract is not in this case at all. The sureties did not guarantee the performance of any contract between the county and its depository. Their undertaking was to guarantee the acts and conduct of the depository, and not at all to insure the performance of any contract between the county and its depository.

The appellants Smith, Hodges, and Dabney agree with our original holding that the county was not barred by an election of remedies, but insist that the county was barred by res adjudicata and equitable estoppel by judicial admissions. We do not find the elements of res adjudicata existing in this cause. The sureties were not parties to the original suit of Eastland County v. Chapman et al., supra, and the issues presented in this case were not there adjudicated against the county and in favor of the sureties. Neither do we find sufficient facts in the record to support an equitable estoppel. The county did make admissions in the former suit above referred to that its funds were in an unsecured, noninterest-bearing deposit, but no such injury is shown by the record to have resulted to the sureties on account of such admissions as should estop the county in the instant case. As pointed out in the original opinion, it was impossible for the county authorities to determine the status of its funds at the time it instituted the original suit. It, therefore, presented two claims to the banking commissioner, one as a secured, and the other as an unsecured, depositor. We do not think that its efforts to enforce liability on the wrong one of these theories would constitute an equitable estoppel against it, releasing the parties who were actually liable, in the absence of a clear showing of injury.

A careful reconsideration of the entire case, in the light of able motions for rehearing, has not convinced us that we erred in our original holdings herein, and all of the motions for rehearing will, therefore, be overruled.