BOARD OF COUNTY COMMISSIONERS OF REDWOOD COUNTY v. CITIZENS' BANK OF REDWOOD FALLS and Others.[1]

January 19, 1897.

Nos. 10,139—(88).

**County Depositary — Bond — Liability of Sureties — Application of Payments.**

A bank which had been depositary of county funds for one term, about to expire, and which was indebted to the county for money deposited with it during that term, was designated depositary for a second term, and gave to the county a bond, with sureties, conditioned that it would pay on demand all funds "which shall be deposited in said bank pursuant to said designation." The account between the bank and the county was kept in the form of one open current account. During the second term, from time to time, deposits were made to the credit of the county, and payments made generally to the county on its checks; the amount of these payments during the second term exceeding the amount of the deposits during the same time, leaving a balance still due the county when the bank failed during the second term. *Held*, that the sureties were only liable for money deposited during the second term for which their bond was given, but that the relation between the bank and the county was that of debtor and creditor, and that the money deposited with the bank became its property, and all payments made by it to the county were made with its own funds; and, having been paid generally on a single continuous account, the law will appropriate them according to the general rule, viz. the first item on the credit side to discharge or reduce the first item on the debit side; that the sureties have no right to have the payment first applied to discharge the debits created by deposits made during the second term. The case distinguished from those on official bonds where the officer was merely the

[1] Reported in 69 N. W. 912.

custodian of public funds, which remained the property of the public, and where he used the public funds which came into his custody during one term to discharge his liability on account of an embezzlement committed by him during a previous term.

Appeal by plaintiff from an order of the district court for Redwood county, Webber, J., denying a motion for a new trial. Reversed.

*H. W. Childs*, Attorney General, *George B. Edgerton*, Assistant Attorney General, *Arthur M. Wickwire*, and *Frank Clague*, for appellant.

The general rule as to the appropriation of payments upon a running account applies. Clayton's Case, 1 Mer. 584; Munger, Applic. Paym. 102; Lash v. Edgerton, 13 Minn. 197 (210); Hersey v. Bennett, 28 Minn. 86, 9 N. W. 590; Jefferson v. Church, 41 Minn. 392, 43 N. W. 74; Winnebago P. M. Co. v. Travis, 56 Minn. 480, 58 N. W. 36; Sheppard v. Steele, 43 N. Y. 52; Smith v. Loyd, 11 Leigh, 512; Howard v. McCall, 21 Grat. 205; Hammer v. Rochester, 2 J. J. Marsh. 144; Milliken v. Tufts, 31 Me. 497; Bean v. Brown, 54 N. H. 395.

*B. H. Schriber* and *Somerville & Olsen*, for respondents.

The question here is not so much one of the application of payments as one of the construction of the obligation of sureties. The obligation of a surety is strictissimi juris. Detroit Savings Bank v. Zeigler, 49 Mich. 157, 13 N. W. 496; Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864; Simonson v. Grant, 36 Minn. 439, 31 N. W. 861; Brandt, Sur. § 93; Mechem, Pub. Off. §§ 282, 286, 291, 292; State v. Medary, 17 Ohio, 555; Lang v. Pike, 27 Ohio St. 498.

The sureties are not chargeable if all the funds received during the second term have been accounted for. County v. Willard, 39 Minn. 125, 39 N. W. 71; Bissell v. Saxton, 66 N. Y. 55; Kellum v. Clark, 97 N. Y. 390; County v. Hutchinson, 60 Iowa, 724, 9 N. W. 901; Mann v. Yazoo City, 31 Miss. 574; U. S. v. Eckford's Execs., 1 How. 258; Lowry v. Hull, 64 Ind. 421; County of Mahaska v. Ingalls, 16 Iowa, 81; Vivian v. Otis, 24 Wis. 518; District Tp. of Milford v. Morris, 91 Iowa, 198, 59 N. W. 275; Inhabitants v. Randall,

105 Mass. 295; Peoria & P. U. Ry. Co. v. Buckley, 114 Ill. 337, 2 N. E. 179; Stern v. People, 96 Ill. 475; Board v. Fonda, 77 N. Y. 350.

MITCHELL, J. This action was brought on a bond given May 2, 1894, by the defendant bank as a depositary of county funds, pursuant to the provisions of G. S. 1894, §§ 730, 731. The bond, after reciting that the bank had been duly designated as a depositary of the funds of the county for the term of two years from the date thereof, and had agreed to pay interest thereon at 2 per cent. per annum on monthly balances, was conditioned that it—

"Shall well and truly credit such interest on such monthly balances to said county, and shall well and truly hold such funds, with accrued interest, subject to draft and payment at all times on demand, and shall well and truly pay over on demand, according to law, all of said funds which shall be deposited in said bank pursuant to said designation and said statutes aforesaid, and all of the interest so to be credited."

During the life of the bond the bank became insolvent, and made an assignment for the benefit of its creditors. At this time it was indebted to the county for county funds deposited with it in the sum of $3,642.74, which, not having been paid on demand, is sought to be recovered from the sureties on the bond. The court directed a verdict in favor of the sureties upon the evidence, which disclosed the following state of facts: The bank had been designated depositary of county funds for the two years immediately preceding, and as such was indebted to the county in the sum of $5,341.79 for moneys deposited with it during that term. This first term being about to expire, and a second term, under a new designation, about to begin, for which a new bond was to be executed, the county treasurer and the officers of the bank made an arrangement by which the former drew his check on the bank for the amount of this balance, and received in exchange therefor a draft on New York for an equal amount, with the understanding that he should never present or forward it for payment, but should hold it until after the new bond was delivered and approved, and then redeposit it to the credit of the county. Defendant bank had no funds in the hands of the drawee with which to meet this draft, and as a matter of fact, if it had been presented for payment, it would have been dishonored.

This arrangement was carried out, and on May 9 the county treasurer returned the draft to the bank, which credited the county with the amount as a deposit of that date of so much money.

The account of the county was kept in the form of an open account, the same as that of any depositor, except, of course, that monthly balances were struck for the purpose of computing the interest to be credited to the county. Subsequently, from time to time, the county made deposits aggregating $14,618.16, and during the same time drew out various sums aggregating $16,317.21, leaving the balance due the county (including the $5,341.79) at the time the bank failed, $3,642.74. It will be observed that, if the $5,341.79 is excluded, the county drew out more than it deposited during the term for which the bond in suit was given. It is upon this fact that the sureties rest their contention that the condition of their bond has been fully performed. Their position is that under the terms of the bond they are only liable for funds "which shall be deposited in said bank pursuant to said designation,"—that is, during the two years from and after the date of the bond,—and not for moneys deposited during the first two years; that for such funds the sureties on the first bond are liable.

This question was expressly reserved in Board of Commrs. of St. Louis Co. v. American Loan & Trust Co., supra, p. 112, 69 N. W. 704, but we think the contention of the defendants is correct. The language of the bond itself would seem to be decisive of this question. The statute is entirely silent as to what the conditions of the bond shall be. It merely provides that all such bonds shall be given for the term of two years from their date, and shall be renewed every two years. The form of bond adopted in this case seems to have been in general use throughout the state for years, and presumably was prepared by some department of the state government. Our conclusion is that under a bond of this form the sureties are liable only for funds deposited with the bank during the term for which the bond was given, but that they continue liable for such funds until they are paid, although payment may not be demanded until after such term has expired.

The next contention of the defendants is that the arrangement between the bank and the county treasurer, by which the latter accepted the draft on New York, held it, and then deposited it, amount-

ed to nothing, and in no way affected the respective rights or obligations of either the county, the bank, or the sureties. This we think is also correct. The original debt of the bank to the county remained the same as if no such mere paper formalities had been resorted to. When these paper transactions were completed on May 9, the sureties on the bond in suit were no more liable for this $5,-341.79 than they were before.

The further and last contention of the defendants' counsel is that the general rule as to the appropriation of payments has no application to the case as against them; that the county cannot insist on any of the payments made by the bank during the term of the bond being applied towards satisfying this balance due for money deposited during the previous term, but, on the contrary, that they are entitled to have all such payments treated as having been made on account of funds deposited during the current term, and hence, as such payments exceed the amount deposited, the condition of the bond has been satisfied. Here, in our opinion, is the fallacy in counsel's argument.

The cases cited by them in support of their position were on official bonds, where the principal was a mere custodian of public funds, which he was bound to keep intact, and to pay over to the government or municipality whose officer he was, which continued during all the time to be the owner of the money. He could not use it for any other purpose without a violation of duty. Hence he had no more right to use public moneys which came into his official custody during one term to discharge his liability on account of an embezzlement committed by him during the previous term, than he had to use it to pay any other debt which he owed. To pay such a defalcation out of accruing receipts during a subsequent term would be a fraud upon the sureties for such term. The money in the hands of such an official is not his money, but the money of the public. U. S. v. Eckford's Exrs., 1 How. 250, which grew out of the noted Swartwout defalcations, is a leading case on the subject, and states the rule and the reasons for it as well as they are stated anywhere.

But the relations of a bank to the county and to the funds deposited with it under this statute are entirely different. The relation between the bank and the county is that of debtor and creditor, the same as between it and any other depositor. The money deposited does not remain the property of the county, but becomes the

property of the bank, which it has a right to lend or use in any other way it sees fit. This right is implied from the fact, if from nothing else, that the bank is to pay interest on the money. When the bank pays out money on the check or draft of the county, it is using its own money, and not that of the county; in other words, it is merely paying its debt with its own funds. It is never in default until payment is demanded by the county and refused. If a bank is designated as a depositary for two or more successive terms, while the time is, as respects liability of the sureties on the different bonds, deemed divided into different terms, yet, as between the bank and the county, there is the uninterrupted relation of debtor and creditor during the whole time on one continuous account. When payments are made on that account, the sureties have no right, either in law or equity, to control the appropriation of them, or to require that they shall be applied on deposits made under their bond.

In their last analysis, the facts, according to their legal effect, are that, upon a mutual current account, the bank has, during the term of this bond, made payments, with its own money, on its indebtedness to the county, amounting in the aggregate to more than the amount of the new indebtedness which it has contracted on the same account during the same time. The money with which such payments are made is the money of the bank, which it may apply as it chooses; and, this being so, then, by a parity of reasoning, if it is paid generally without any express stipulation or arrangement between it and the county, the law will apply it on the account according to the priority of time; that is, the first item on the debit side of the account is discharged or reduced by the first item on the credit side. Hersey v. Bennett, 28 Minn. 86, 9 N. W. 590; Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74. There is nothing in the facts to take the case out of this general rule as to the application of payments. The result is that the $5,341.79 due on the account at the end of the first term has been fully discharged by the subsequent payments, and the balance of $3,642.74, due when the bank failed, is properly referable and chargeable to moneys deposited during the second term, for which the defendants are liable on their bond. Hence the court erred in directing a verdict in their favor.

Order reversed, and new trial ordered.