STATE USE RANDOLPH COUNTY *v.* POCAHONTAS STATE BANK.

Opinion delivered October 19, 1931.

*E. G. Schoonover, George M. Booth* and *Chas. D. Frierson,* for appellants.

*George M. Gibson, W. J. Schoonover* and *Walter L. Pope,* for appellees.

BUTLER, J. The Pocahontas State Bank was named county depository of Randolph County for a two-year period, beginning with the first day of May, 1929, and on June 1, 1929, gave the bond required by order of the county court with Ben A. Brown and others as sureties thereon. The bond was duly approved, and the treasurer of the county from time to time during the year 1929 made deposits of funds in said bank, the property of Randolph County and various school and road districts in said county, withdrawing as occasion required part of said funds by proper warrants, so that on February 7, 1930, there remained in said bank to the credit of the treasurer of the county the sum of $19,070.22. On that date said bank and the Randolph County Bank, another banking corporation located in the town of Pocahontas, entered into an agreement by which the business of the two banks was merged, and to carry out this merger a new bank, called the Randolph State Bank, was duly incorporated. The assets of the two old banks were assigned to the new bank, which assumed the liabilities of the two old banks according to the stipulation of the merger agreement. Both the Pocahontas State Bank and the Randolph County Bank retained their corporate identity but agreed that they should receive no more deposits and

should cease to engage in the banking business except for purposes of liquidation.

On the 8th day of February, following, the account of the county treasurer with the Pocahontas State Bank was closed, and the amount due him on that date was entered to his credit on the books of the new bank, so that on that day the county treasurer had to his credit property of the county and school and road districts, the sum of $19,070.22. The Pocahontas State Bank included in the assets to the Randolph State Bank its banking house in which the new bank opened for business and in which it operated.

It is stated by counsel for appellants in the brief filed here that a number of the sureties on the bond heretofore mentioned continued to act as officials in the new bank, and we assume this to be a fact. For purposes of convenience, the stationery of the two old banks was used by the new bank in the transaction of its business, the old check books were continued to be used, and a depositor in the new bank would draw his check using the form of one of the old banks without changing the name and the check would be paid by the new bank; likewise, when a deposit was made, the old blanks for certificates of deposit were used without any change in the name at the head of these blanks.

The treasurer of Randolph County continued to make deposits in, and withdrawals from, the new bank up to November 15, 1930, when the new bank became insolvent and was taken over by the State Bank Commissioner for liquidation. During the time it operated the treasurer deposited with it, in addition to the money to his credit on February 8, 1930, other large sums of the county and school and road districts, and from time to time withdrew a sum far greater than the original deposit. As a result of the deposits and withdrawals there remained to his credit on November 15, 1930, the sum of $37.909.91.

This suit was instituted on December 26, 1930, against the Pocahontas State Bank, and the sureties on the aforesaid bond to recover from them said sum last mentioned. The case was submitted to the court on an agreed statement of facts which established, among other things, the foregoing statement. Other facts are not here recited as they are immaterial in view of the conclusion reached.

It is the contention of the appellants that upon the merger of the Pocahontas State Bank and the Randolph County Bank each continued as separate corporations, and that such merger did not change the liabilities of the Pocahontas State Bank as depository or of the sureties upon its bond. Appellants also contend that the sureties were officials and stockholders of the Pocahontas State Bank and are estopped to claim that they were released from liability upon the depository bond, and that there can be no apportionment of the loss with reference to dates of deposits or checks. It will be unnecessary for us to examine the questions presented in the second and third contentions of appellants as we are constrained to find against them on the first contention.

We agree with the contention of counsel for appellees that the Pocahontas State Bank paid to the Randolph State Bank on February 8, 1930, the amount of the deposit of the county treasurer, and that his subsequent actions amount to the acceptance of the fund so transferred, which was in due course withdrawn by him, and that this act terminated the relationship before existing between the Pocahontas State Bank and Randolph County, and relieved such bank and its sureties from any liability on the depository bond; or, as succinctly stated by counsel for appellees, "At the time the Pocahontas State Bank ceased to do a banking business, it was liable only for $19,070.22, and that amount has been paid."

The measure of liability of the Pocahontas State Bank and its sureties must be found in the terms and conditions of the bond executed. The condition of the bond

in this case is as follows: "Whereas, by an order of the Randolph County Court entered at its April term, 1929, the said Pocahontas State Bank was designated as the depository for all of the funds of Randolph County for the two-year period, beginning on the first day of the April term, 1929, of this court, and, whereas, under the order of this court, the said Pocahontas State Bank was to pay 3 per cent. per annum on the daily balances of the said funds carried in the said depository during the said period of time.

"Now, if the said Pocahontas State Bank shall duly and properly perform all the duties and obligations devolved by law upon said depository and shall promptly pay upon presentation all checks drawn upon said depository by the county treasurer of Randolph County, so long as said funds shall be in said depository to the credit of said county, and if all funds of the county shall be safely kept by the said depository and accounted for according to law, then this obligation is to be null and void; otherwise, to remain in full force and effect."

.  The obligation on the part of the Pocahontas State Bank and its sureties therefore was that it should pay on demand of the county treasurer all checks drawn upon it so long as any funds remained in the bank to the credit of the county. The appellee bank ceased to do a banking business on February 7, 1930, and the funds in its hands to the credit of the county were delivered to the Randolph State Bank, which bank undertook to pay them out on the order of the county treasurer. While the specific sum transferred to the credit of the treasurer on the books of the new bank was not paid at one time and in one amount, the legal effect of the subsequent transactions between the county treasurer and the new bank was as if this had been done; for, after the 8th of February, 1930, the county treasurer continued to deposit in the new bank and to withdraw therefrom the county funds so long as the bank continued in operation. This was tantamount to an acceptance on the part of the county

treasurer of the change of the account, and since he withdrew from the bank in excess of the amount transferred to it from the county depository, in the absence of an agreement to the contrary, the law presumes that the money first withdrawn was $19,070.22, the money first placed to the treasurer's credit in the Randolph State Bank.

It is the general rule that, where there is a running account and a payment is made, and neither the debtor nor the creditor directs to what item the payment should apply, the law applies such payment to the oldest item on the account. This rule is well established in this State and seems to be one of universal application, so much so that we deem the citation of authorities unnecessary.

It is also settled law that the relation between banker and depositor is that of debtor and creditor, and we can see no distinction in principle in an account between a bank and its depositor and any other running account. In the case of *City Nat. Bank* v. *Eastland County,* 12 S. W. (2d) p. 662-667, cited by appellee, the court of Civil Appeals of the State of Texas, in determining a case similar in many respects to the case at bar, said: "One of the defenses urged by the corporate sureties was that the county had received payment on all obligations for which they ever became liable. This contention is sustained. It is elementary that the liability of these sureties can, at most, be extended no further than for the payment to the county of all moneys deposited by the county in the City National Bank. As to any funds deposited with the Security State Bank, these sureties assumed no obligation, and cannot be held responsible, for their liability must be measured by the contract which they signed, and cannot be extended by implication to cover any other and different contract. The amount on deposit in the City National Bank on the day its assets were taken over by the Security State Bank was $262,436.55. Thereafter the county continued to make deposits with the Security Bank and to draw vouchers against said bank. The trial court found that by the 16th day of March,

1921, the county had withdrawn, in the regular course of business, sufficient funds to total the amount of such deposit. Thereafter the county continued to withdraw funds from the bank, until it closed for liquidation on August 2d. The total amount withdrawn by the county from said funds greatly exceeded the amount on deposit by the county at the time the City Bank turned over the account to the Security Bank.

"It is a well-established rule that, when payments are made upon a current account by a debtor to a creditor and no application is made by either, the law will apply the payments according to priority of time, liquidating the oldest items first. * * *

"No reason can be perceived why this rule should not apply between a bank and its depositor. The relation, as stated, is that of debtor and creditor. Each deposit made in a bank creates a new item of indebtedness due by the bank to the depositor, and each check or voucher cashed by the bank constitutes a payment by the debtor on its account, consisting of various items owing to the creditor. *Sunflower County* v. *Drew,* 136 Miss. 191, 101 So. 192; *Henry County* v. *Salmon,* 201 Mo. 136, 100 S. W. 21; *Freemont County* v. *Freemont Bank,* 138 Iowa 167, 115 N. W. 925; *Pittsburg* v. *Rhodes,* 230 Pa. 397, 79 A. 634; *Board of Commrs.* v. *Citizens' Bank,* 67 Minn. 236, 69 N. W. 912; *State* v. *U. S. F. & G. Co.,* 81 Kan. 660, 106 p. 1040, 26 L. R. A. (N. S.) 865." See also *First National Bank* v. *National Surety Co.,* 130 Fed. 401, 66 L. R. A. 781.

It is therefore immaterial whether the Pocahontas State Bank ceased to exist after the merger or whether it retained its corporate identity, and the citations from the text writers and the decisions to which we are referred by counsel for appellants have no application. Neither do we think that the facts in this case call for an application of the rule *strictissimi juris,* for as the condition of the bond was performed and the principal relieved of liability, the sureties were of course exonerated.

We have not overlooked the fact that the new bank continued to operate in the building formerly occupied by appellee bank and that the stationery of the appellee bank was continued to be used by the new bank, or the argument of counsel of appellant based thereon. There was no allegation of a fraudulent concealment on the part of the appellee bank of the merger and transfer of its assets to the Randolph State Bank, neither do we think the evidence justifies such conclusion.

It can scarcely be doubted but that, in a town the size of Pocahontas, such change in as important institutions as was effected between the banks there, would be known to every one, especially those, who, like the treasurer, had been doing business with the bank. These circumstances in some cases might be strong evidence of fraud, but, when the entire situation of this case is considered, they have no weight.

The judgment is therefore affirmed.