### GREAT AMERICAN INDEMNITY CO. v. OAKLAND COUNTY.

No. 8085.

Circuit Court of Appeals, Sixth Circuit.

May 8, 1940.

R. E. Plunkett, of Detroit, Mich. (Frederick J. Ward, of Detroit, Mich., on the brief), for appellant.

Robert D. Heitsch, of Pontiac, Mich., for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This is an appeal from a judgment against appellant, as surety on a depository bond. The funds sought to be recovered

were deposited and the default occurred after the depository and another bank had been merged into a new corporation. The suit was removed to the District Court on the ground of diversity of citizenship. The facts are all stipulated.

On November 12, 1930, the City of Pleasant Ridge, Michigan, designated the First State Bank of Royal Oak, a Michigan banking corporation, as official depository of its funds. On the same day, the Bank, as principal, and appellant, as surety, executed a depository bond conditioned that the bank during the ensuing year would promptly account for and in due and ordinary course of business pay over on legal demand all moneys deposited with it by or on behalf of the City of Pleasant Ridge.

On December 31, the First State Bank and the Royal Oak Trust and Savings Bank agreed to "merge or consolidate" and form a new corporation, the State Savings Bank of Royal Oak. The agreement provided for the dissolution of the old banks, the transfer of all their assets and surrender of their stock to the new bank in return for its stock.

Apparently some moneys were deposited with the First State Bank prior to consolidation, but they are not here involved. This suit is to recover $44,581.08, deposited between January 16 and March 6, 1931, for which the State Savings Bank had issued its certificates of deposit to the City. Subsequent to institution of suit against the surety, the City assigned to appellee the depository bond, as well as the cause of action thereon.

The sole question here involved is whether the liability of appellant on the depository bond survived its principal's merger or consolidation with another bank.

To support its contention that this liability did survive, appellee relies upon 3 Michigan Compiled Laws for 1929, § 11954,[1] which provides that the consolidated banking corporation shall be a continuation of the entities of all the corpora-

---

[1] This section, in part, reads: "In the event of any consolidation heretofore or hereafter effected in any manner prescribed by this act, the consolidated corporation, by whatever name it may assume or be known, shall be a continuation of the entity of each and all of the corporations so consolidated, and as such entity shall hold, exercise and perform all rights, powers, privileges, duties and obligations appertaining to any and all trust, representative or fiduciary relationships of whatsoever. nature of each of the consolidating corporations at the time of such consolidation, whether the appointment of such consolidating corporation in any such trust, representative or fiduciary capacity shall have been by any court or otherwise and shall hold, exercise and perform all rights, powers, privileges, duties and obligations appertaining to any and all trust, representative or fiduciary relationships whatsoever as to or for which either or any one (1) of the corporations so consolidating may have been appointed, nominated or designated by any will or conveyance or otherwise, whether or not such will, conveyance or other act intended to create such trust, representative or fiduciary relationship shall have been executed or have come into or taken effect at the time of such consolidation; and further, in the event of any such consolidation heretofore or hereafter effected, the consolidated corporation shall succeed to and become the owner of all property, rights, powers, franchises, privileges and appointments, whether existing, contingent or future, corporeal or incorporeal, tangible, or intangible, of every nature whatsoever of each of the consolidating corporations, and if any of the consolidating corporations shall be acting or shall have been nominated, appointed, delegated or designated by any court, person or otherwise irrevocably or contingently to act as trustee, attorney, agent, executor, administrator, receiver, assignee, guardian, or in any fiduciary or representative capacity or relationship, or in any other capacity or relationship whatsoever, the consolidated corporation shall succeed to all of the property, rights, powers, privileges, duties and obligations appertaining to each fiduciary, representative or other capacity or relationship, without further or additional appointment, confirmation or designation whatsoever, and said consolidated corporation shall file with each court or other public tribunal, agency or officer by which any of the consolidating corporations shall have been so appointed and designated, and in the file of each estate, suit or proceeding in which so then acting, a statement setting forth the fact of such consolidation, the name of each other corporation entering therein, the name of the consolidated corporation and its place of business, capital, and surplus; but nothing herein contained is intended or shall be construed to limit or restrict in any wise the powers and authority of any court of competent jurisdiction in respect of any matter arising by reason of any such condition."

tions consolidated and, as such, hold and exercise all the rights, powers, etc., "appertaining to any and all trust, representative or fiduciary relationships of whatsoever nature of each of the consolidating corporations at the time of such consolidation."

 We are of the opinion that this section was intended to enable and require the new bank to act as substitute for the old banks only in respect to their "trust, representative or fiduciary relationships,"—many of which would not otherwise be assignable or delegable,—for the phrase occurs several times in the section. Inasmuch as the relation of the First State Bank to the City was not "trust, representative or fiduciary" in character, but simply that of debtor and creditor to the extent of deposits made, we are of the opinion that the case at bar is not within the intendment of the section relied on. No statute was required to enable the State Savings Bank to recover upon any claims formerly owned by either of the old banks, for they had all been assigned to it; nor was any statute necessary to enable obligees of the old banks to recover from the new, as beneficiaries of its covenants with the old banks to discharge their obligations.

Inasmuch as we think the statute relied upon by appellee inapplicable, the case must be disposed of upon general principles of common law.

 We think it clear that appellant's principal, the First State Bank, is not indebted upon certificates of deposit issued by and in the name of the State Savings Bank. The latter alone is liable, and its failure to pay in accordance with its promise was not a default by appellant's principal. The merger or consolidation of the two old banks resulted in a bank distinct and different from either of the old banks. Before signing its depository bond, appellant doubtless considered the record, financial condition and management personnel of the First State Bank, in estimating the risk involved, and determining whether it would be assumed. The risk incident to suretyship for the State Savings Bank was different; it may have been greater or less, but that bank was not in existence and necessarily could not have been contemplated as principal when the bond was executed. It would be unfair to hold that appellant assumed a risk it could not have contemplated; and this is so notwithstanding the fact that it is a compensated surety,

a fact of no importance in determining the identity of its principal.

The case of Worth Corporation v. Metropolitan Casualty Insurance Co., 142 Misc. 734, 255 N.Y.S. 470, 472, affirmed, 235 App. Div. 782, 256 N.Y.S. 1007, presented precisely the same problem as is presented in the case at bar. Holding the surety not liable, the Court said:

"Stated succinctly, the question thus presented is whether a surety for the operations of one corporation assumes liability for the operation of any other corporation into which it may be merged? The answer to that question does not seem to me to depend on whether, under the statute as it existed previous to 1923 (Stock Corporation Law of 1909, § 15), the possessor corporation held the assets of the merging corporation segregated and subject to the claims of its creditors (Irvine v. New York Edison Company, 207 N.Y. 425, 101 N.E. 358, Ann.Cas.1914C, 441), or whether, under the statute as it exists today, the possessor corporation succeeded to its assets together with its liabilities (Guaranty Trust Company v. New York & Q. C. Ry. Company, 253 N.Y. 190, 170 N.E. 887). Its determination depends rather on whether the default for which the defendant is sought to be charged is the default of the corporation for which it agreed to be bound. That question, it appears to me, is a question of identity. It is not sufficient that the Retail Stores Delivery Corporation has succeeded to all the rights and has assumed all the liabilities of the Richmond Boro Distributors, Inc., if the corporation which resulted from that union was not the corporation for whose defaults the defendant assumed responsibility.

\* \* \* \* \* \*

"To hold that a surety which has assumed responsibility for the operations of a corporation, however small, is, by merger, subjected to liability for the operations of a successor corporation, however large, seems to me to extend the scope of its undertaking beyond reasonable limits. A surety may be willing to guarantee a solvent corporation. It may not be willing to guarantee a corporation which, by merger perhaps with many other corporations, is rendered bankrupt. It may be willing to guarantee a corporation with restricted corporate powers. It may not be willing to guarantee a corporation which, after merger, has far wider powers. It may be will-

ing to guarantee a well-managed corporation conducting operations on a limited scale. It may not be willing to guarantee more extensive operations of a corporation with a record of bad management. Surely it cannot be said that these considerations are without importance to a surety when it executes its bond. 'Though there is no personal or human equation in the management of a corporation, there is a legal equation.' (New York Bank Note Company v. Hamilton Bank Note Engraving & Printing Company, 180 N.Y. 280, 293, 73 N.E. 48, 52.)"

We think this reasoning is sound and conclude that the District Court should have awarded judgment to appellant. See also State for use of Randolph County v. Pocahontas State Bank, 184 Ark. 442, 42 S.W.2d 546, 78 A.L.R. 377; City Nat. Bank v. Eastland County, Tex.Civ.App., 12 S.W. 2d 662.

The judgment of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.