The State of Texas v. Middleton's Sureties.

(Case No. 4495.)

1. Application of Payments.— The rule between parties acting in their own right does not obtain beween the collecting officers of the state and their sureties, and the accounting officer of the state.

2. Same — Tax collector.— Taxes collected and paid into the treasury cannot lawfully be applied to the discharge of a pre-existing debt of the tax collector on a former account. The collector cannot authorize it, nor can the comptroller apply it to the injury of the sureties of the collector.

3. Same — Same.— That the comptroller was ignorant of the source from which funds have been received, which have been by him, without instruction from the collector, applied to his indebtedness for taxes for former years, does not deprive the sureties of the benefit of the payment of such funds into the treasury by their principal.

4. Same — Same.— A payment upon a draft upon the collector on account of the school funds is subject to the same rules as to the use of state funds, and the effect of using them in such payments, as if made directly to the treasury.

5. Tax bond.— The contract of the sureties upon a tax collector's bond is that the collector shall pay into the state treasury, either directly or indirectly, all funds which he might collect, and which, under the law, are so to be paid.

6. Payment upon tax account with other funds.— A payment by the collector, out of funds other than tax money so collected, can be applied by the collector as he may indicate, and, in the absence of direction, the comptroller may direct its application.

7. Obligation of sureties on tax bond.— Without default upon the part of their principal in regard to that which his sureties have contracted he shall do, there can be no liability upon them. Such liability cannot depend upon the application of the funds after they legally reach the treasury.

8. Payment by misapplication of funds.— A payment of a school fund draft drawn upon the tax collector by the use of or out of county taxes received by him for the current year, would be unlawful, and in the application of such payment the sureties could make no complaint. They can have no rights resulting from such transaction.

Appeal from Travis. Tried below before the Hon. A. S. Walker.

December 19, A. D. 1879, the state brought this suit against W. B. Middleton as principal, and D. C. Carrington, A. G. Rogers, R. B. Coleman, W. P. Evans, W. M. Evans, H. B. Pruitt, H. H. Thompson, W. L. Rogers and A. W. Landers as sureties, on the official bond of Middleton as sheriff and collector of taxes of Leon county, dated the 2d day of May, A. D. 1876, for the balance due the appellant by Middleton, as collector of taxes of Leon county, on his account for the year 1876, amounting to $5,868.37, besides interest. Pending the suit, Middleton, the principal, died.

On the 4th day of April, A. D. 1881, the sureties filed their second amended original answer, in which, besides demurrers on vari-

ous grounds to plaintiff's amended original petition, and a general denial, they pleaded, in substance, that their principal had been in the office of collector of taxes for a term previous to the one for which they became his sureties, and had other sureties; and that at the time they became his sureties, he was largely indebted to the state on his accounts for the years 1874 and 1875, and was actually a defaulter to the amount of such indebtedness; that while they were the sureties of Middleton, he collected and paid into the treasury large sums of money, which they specified, which the comptroller wrongfully appropriated to the settlement of the accounts of Middleton for the years 1874 and 1875.

On the 4th day of April, A. D. 1881, plaintiff filed an amended first supplemental petition in reply to the defendants' second amended original answer, in which, besides demurrers and a denial, it was alleged, in substance, that all payments made to the plaintiff by Middleton were applied and credited by the comptroller of public accounts as directed by Middleton, whenever he gave directions, and when no direction was given, the comptroller credited Middleton with all payments made to plaintiff on his indebtedness, and applied such payments properly to some of the accounts due to plaintiff by Middleton; that the application of the payments was made at the time of payment and before the commencement of any controversy on the subject of the application of payments; that neither the plaintiff nor the comptroller had any knowledge of the source from which the money was derived with which any payment was made; and that before the commencement of any controversy about the application of payments, Middleton's accounts for the years 1874 and 1875 had been closed.

On the 11th day of April, A. D. 1881, the case was tried. The death of Middleton and of A. G. Rogers was suggested, and the suit was discontinued as to them. All the demurrers in the record were overruled, and the court submitted the case to the jury on special issues, and upon their verdict declined to render judgment for the plaintiff for $5,868.37, the full amount claimed, but allowed the defendants credits to the amount of $4,708.64, leaving $1,159.73, for which amount, and the further sum of $397.04 interest (in all $1,556.77), judgment was rendered for the plaintiff, to which judgment both parties excepted.

Each party made a motion for a new trial, both of which were overruled, and the plaintiff appealed.

The opinion sufficiently shows the testimony and rulings of the court below.

*J. H. McLeary*, Attorney General, and *D. W. Doom*, for the appellant.— On the verdict the court ought to have rendered judgment for the amount claimed by the plaintiff and found by the jury to be due on the account sued on, without regard to the credits claimed by defendants for payments made and applied on other accounts due the plaintiff.   Bruce v. United States, 17 How., 437; United States v. Kirkpatrick, 9 Wheat., 720; United States v. Vanzandt, 11 Wheat., 184; Story's Eq. Jur., sec. 459*g*, note 4; Brandt on Suretyship and Guaranty, sec. 294; Chapman v. The Commonwealth, 25 Gratt., 721.

*Shelley, Carrington & Rector*, for appellees.

I. The sureties were entitled to credits upon the account for all taxes for the year 1876 collected by their principal and actually paid into the state treasury by him.   This right cannot be affected by any application of such funds after they reach the treasury. Hetton v. Lane, 43 Tex., 279; United States v. January, 7 Cranch, 572; United States v. Eckford's Ex'rs, 1 How., 251; Abraham Meyers v. The United States, 1 McLean, 496; United States v. Boyd, 5 How., 48; United States v. Girault, 11 How., 28; Jones v. United States, 7 How., 681; Pickering v. Day, 2 Del. Ch. R., 366; Boring *et al.* v. Williams, Treas., 17 Ala. (N. S.), 525; Porter v. Stanley, 47 Me., 515; Snider v. Alexander, Supreme Court of Ohio in 1878; see The Reporter, vol. 6, 664; Miller v. The Commonwealth, 8 Pa. St., 444; Thomson v. McGregor, 11 Reporter, 203; Cullom, Governor, v. Dalloff, vol. 8, Reporter, 107; S. C., Supreme Court of Illinois; Lyndon v. Miller, 36 Vt., 329.

II. Between conflicting sureties on different bonds of a collector, one set of whom must suffer, the source from which the money came, and not the ignorance of the comptroller as to its origin at the time of its application, will determine to which bond it must be applied.   Boring v. Williams, 17 Ala. (N. S.), 525; Porter v. Stanley, 46 Me., 515; Snider v. Alexander, vol. 6, Reporter, 664, Ohio case, 1878.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the state of Texas against W. B. Middleton, collector of taxes for Leon county, and the sureties upon his bond, to recover the sum of $5,868.37 on his account as collector of taxes due the state for the year 1876.

W. B. Middleton having died pending the suit, it was dismissed as to him and prosecuted to final judgment against his securities.

The cause was tried by a jury, which, under the instructions of the court, made special findings, upon which the court rendered a judgment against the defendants for the sum of $1,159.73, with interest, from which the state appealed, and both parties have assigned errors.

The jury found that the collector had collected of the taxes due for the year 1876 the sum of $4,151.90, and that the same had been paid into the state treasury, but that it had been applied by the comptroller upon the accounts of the collector for the years 1874 and 1875, he having been the collector of taxes for Leon county during those years, and being in arrear for those years about $12,000. It was, in effect, found that the collector had none of the money by him collected for the years 1874 and 1875 in his hands on the 2d day of May, 1876, at which time he executed the bond upon which the present suit is based. No direction was given by Middleton as to how the $4,151.90 should be appropriated, and it does not appear that the comptroller knew from what source the same was derived.

Although the sum so paid into the treasury of the state had been appropriated by the comptroller to two accounts of the collector for the years 1874 and 1875, the court applied the same as a credit upon his account for the year 1876; and this is assigned as error by the state.

It is claimed by the state's counsel that as no directions were given by the collector to the comptroller, at the time the money was paid into the treasury, as to what account the same should be appropriated, that the appropriation made by the comptroller must stand, he having no notice at the time the appropriation was made that the fund arose from taxes collected for the year 1876, after the execution of the bond sued upon.

There has been some contrariety of decision upon this question, but it is believed that by the great weight of authority, as well as upon principle, the question must be decided adversely to the position assumed by the state.

The rule for the appropriation of payments between parties acting in their own right is well settled, and is that the debtor may direct in what manner the money paid by him shall be appropriated, and that if he fails to do so, that the creditor may make the appropriation; and that in the absence of an appropriation by either the debtor or creditor, the law will appropriate it as may be just between the parties, having reference to the character of the indebtedness and all the circumstances.

It is not, however, believed that this rule obtains between the

collecting officers of the state and their sureties, and the auditing or accounting officer for the state. The sureties upon the collector's bonds for the years 1874 and 1875 were not the same as on the bond sued upon. The rule is thus stated by the supreme court of the United States: "A majority of the court is of opinion that the rule adopted in ordinary cases is not applicable to a case where different sureties, under distinct obligations, are interested. The treasury officers are the agents of the law. It regulates their duties, as it does the duties and rights of the collector and his sureties. The officers of the treasury cannot, by any exercise of their discretion, enlarge or restrict the obligation of the collector's bond. Much less can they, by the mere fact of keeping an account current, in which debits and credits are entered as they occur, and without any express appropriation of payments, affect the rights of sureties. The collector is a mere agent or trustee of the government. He holds the money he receives in trust, and is bound to pay it over to the government as the law requires. And in the faithful performance of this trust the sureties have a direct interest, and their rights cannot be disregarded. It is true, as argued, if the collector shall misapply the public funds his sureties are responsible. But that is not the question under consideration. The collector does not misapply the funds in his hands, but pays them over to the government, without any special directions as to their application. Can the treasury officers say, under such circumstances, that the funds currently received and paid over shall be appropriated in discharge of a defalcation which occurred long before the sureties were bound for the collector, and by such appropriation hold the sureties liable for the amount? The statement of the case is the best refutation of the argument. It is so unjust to the sureties, and so directly in conflict with the law and its policy, that it requires but little consideration.

"If the collector be in default for a preceding term, it is the duty of the treasury department to require payment from him and his sureties for that term. To pay such defalcation out of accruing receipts during a subsequent term, even with the assent of the collector, would be a fraud upon the sureties for such term. The money in the hands of the collector is not his money. Without a violation of duty he cannot appropriate it as such. He pays it over in the performance of his duty, — the duty which the sureties have undertaken that he shall perform faithfully. And shall the sureties not be exonerated? The collector has done all that they stipulated he should do. How, then, can they be made responsible? It is contended that

their responsibility arises, not from the default of the collector, but from the appropriation of his payments by the treasury. This, at least, is the fair result of the doctrine advanced. For, if such appropriation is properly made by the treasury, in payment of the defalcation of the collector, before the commencement of the current term, it must follow that the sureties for such term are responsible for the amount thus paid." The United States v. Eckford's Executors, 1 How., 261.

We have quoted largely from the opinion in the above cited case, because it is believed to state clearly the true doctrine upon the question now under consideration, and to state clearly the only true ground upon which the liability of the sureties depends. The same principles are announced in the following cases: Jones v. The United States, 7 How., 688; The United States v. January, 7 Cranch, 575; Meyers v. The United States, 1 McLean, 496; Pickering v. Day, 2 Del. Ch. R., 367; Boring et als. v. Williams, Treasurer, 17 Ala., 525; Porter v. Stanley, 47 Me., 518. There are cases in which it has been held that the want of notice to the officers of the treasury department, of the source from which money came, will render valid and binding the appropriation of the same to an indebtedness of the collecting officer, accruing prior to the time the liability of the sureties whose bonded obligation is sought to be enforced attached, even though the money so appropriated was collected during a second term of office, and for which alone such sureties are liable, and even though such appropriation goes to liquidate an indebtedness of the collecting officer incurred during a former term of office and for which other persons are sureties. Among these are the cases of Chapman et als. v. Commonwealth, 25 Gratt., 742; Lyndon v. Miller, 36 Vt., 329; but in neither the reasoning, nor in the principles announced in those cases, can we concur; and we are of the opinion that the court did not err in appropriating the sum of $4,151.90, collected of the taxes of the year 1876, to the discharge of so much of the collector's indebtedness for taxes for that year.

On the trial the defendants introduced in evidence the following document:

No. 111.— Department of Education.—$4,758.07.— State of Texas, Austin, November 17, 1876.— To the County Treasurer of Leon County: Sir — Your county is entitled to forty-seven hundred and fifty-eight and $\frac{0.7}{100}$ dollars, the same being the amount apportioned to your county for support of public free schools for the scholastic year ending August 31, 1877. The tax collector is authorized to pay to the county treasurer this amount out of any state funds in

his hands in whole or by installments, and the same will be received as a credit in settlement with the comptroller.

RICHARD COKE, Governor,
STEPHEN H. DARDEN, Comptroller,
. . . . . . . . . . . . . . ., Sec. of State,
Board of Education.

Stephen H. Darden, Comptroller, attested by O. N. Hollingsworth, Secretary Board of Education. Indorsed: T. A. Womack, Treasurer Leon County.

They proved that it had been returned to the comptroller by W. B. Middleton, and was, on the 3d day of January, 1877, placed to his credit by the comptroller on his accounts for the years 1874 and 1875.

They then offered to read in evidence to the jury the following instrument in writing, with the indorsements thereon, viz.:

$4,758.07.— Centreville, Texas, December 23, 1876.— Received of T. A. Womack, county treasurer Leon county, draft No. 111, for the sum of four thousand seven hundred and fifty-eight and $\frac{07}{100}$ dollars, being the amount apportioned to Leon county for support of public free schools for scholastic year ending August 31, 1877, which amount I obligate myself to collect and pay over as soon as can be collected out of the taxes now due and owing.

W. B. MIDDLETON,
Sheriff Leon County.

[Indorsed.]

Dec. 23, 1876.— Received from W. B. Middleton on the within draft or receipt, $356.74. T. A. WOMACK, Treasurer Leon County.

Centreville, January 13, 1877.— Received of W. B. Middleton on within amt., $700.          T. A. WOMACK, Treasurer Leon Co.

February 5, 1877.— Rec'v'd of W. B. Middleton on the within amt., $600.          T. A. WOMACK, Treasurer Leon County.

Feb. 16, 1877.— Received of W. B. Middleton on the within amt., $200.          T. A. WOMACK, Treas. Leon County.

April 3, 1877.— Received of H. B. Pruitt on the within named amt., $458.67.          T. A. WOMACK, Treas. Leon County.

The special findings of the jury show that no directions were given by the collector in regard to the appropriation of the sum evidenced by the draft above set out; and that the several sums indorsed upon the receipt which was given to the county treasurer of Leon county by the collector were paid at their several dates with money collected of the taxes of the year 1876, except the sum of sixty-five dollars, which was collected from the taxes due for the

years 1874 and 1875; and that the administrator of the estate of Middleton, after his death, paid to the county treasurer, in county scrip, $1,221.33, received for taxes for the year 1876; and a like sum in county scrip received for taxes in the years 1874 and 1875.

The court allowed as a credit to the defendants the sum of $356.74, the same being the sum paid by the collector on the draft in favor of the county treasurer, on the same day the draft was indorsed to the collector, and refused to allow the residue of the payments made as above stated.

The state assigns as error the allowance of the credit of $356.74, and the defendants assign as error the refusal of the court to allow as credits the other sums indorsed as payments on the receipt given by the collector to the county treasurer.

What we have already said in regard to the appropriation of payments is as applicable to the payment made by the collector on the day he received the draft from the county treasurer, as to payments made in money directly to the state treasury, and that payment was correctly appropriated by the court.

The court held that the payments made to the county treasurer, after the draft was passed to the credit of the collector in his accounts for the years 1874 and 1875, by the comptroller, prohibited the appropriation of taxes other than for those years to the liquidation of the obligation which the collector had made to obtain the draft.

This ruling is based upon the theory that the time when the appropriation was made by the comptroller, and the state of the accounts then existing between the collector and the county treasurer, should control the right of the parties, rather than that the particular fund which was used by the collector to pay the draft should control.

This, we think, was error; for the contract of the sureties was, in effect, that the collector would pay into the state treasury, either directly or indirectly — and the payment to the county treasurer was such a payment — all funds which he might collect, which under the law was so to be paid. If that is done, there can be no breach of their obligation, and any payment made out of funds which they have contracted shall be paid into the treasury by their principal, is a payment which they are entitled to have so appropriated as to relieve them to that extent from their obligation; and any appropriation, either by the direction of their principal, or by the comptroller, undirected, which would deprive sureties of such protection, by applying a fund for which they are responsible to the benefit of other

and former sureties of their principal, would be a violation of their right under their contract, which without their consent cannot be permitted. Their contract is that the money for which they are responsible shall be paid into the state treasury, but they do not contract that the proper appropriation of it shall be made by the comptroller when there; but there is an implied contract or duty upon the part of the government, that when it is paid into the treasury, it shall be appropriated to the discharge of their obligation, and not that it may be appropriated in discharge of the obligation of some other person.

If the collector had borrowed money upon his own personal credit, or upon the credit which the indorsements of his friends might have given him, and had paid the same into the state treasury without any direction as to its appropriation, the comptroller might have properly appropriated the same to the accounts of the collector for the years 1874 and 1875, for money so obtained would have been the money of the collector. That paid to the county treasurer of Leon county was not the money of the collector, but was the money of the state, which when paid to the county treasurer was paid in performance of the very duty which his sureties had contracted he should perform; and which being performed, to that extent must inure to the benefit of his sureties, and relieve him and them from default.

Without default upon the part of their principal, in regard to that which they have contracted he shall do, there can be no liability upon the part of the sureties.

The liability of sureties cannot be made to depend upon the appropriation which the comptroller may make of money which has been properly paid into the treasury; otherwise his discretion, instead of the contract which parties have made with the state, will become the measure of their liability. 1 How., 262.

The contract between the county treasurer and the collector was that the collector would pay to him the amount of the draft, not out of his own funds, but out of funds to be collected by him for the state. The language of the contract was, "which amount I obligate myself to collect and pay over as soon as can be collected out of the taxes now due and owing." The law contemplated partial payments as the collector should have money in hand from collection of taxes due the state. Acts 1876, 204.

The treasurer of the county violated his duty in delivering the draft to the collector until it had been fully paid (Acts 1876, 204), but this cannot affect the right of the sureties to have the proper

appropriation made of that which was paid with funds for which they were responsible.

The court should have credited the defendants with the sums of money paid to the county treasurer by the collector or his successor upon the draft of date November 17, 1876, less the sum of $65, which was paid out of moneys received on taxes of the years 1874 and 1875; but they were not entitled to credit for the sum of $1,221.33, paid to the county treasurer on the draft, in county scrip, collected for taxes of the year 1876, for there was no authority to receive the same. The draft was only payable in such funds as could have been received into the state treasury; county scrip could not have been so received, nor could it have been used for the school purposes for which the draft was drawn; nor were the defendants entitled to a credit for the $300 paid into the treasury by one of the sureties of the collector, he not having directed it to be appropriated to the discharge of the obligation upon which he was a surety. It was a mere loan of money, so far as the record shows, to the collector.

We are not unmindful that there may be great difficulty in properly appropriating sums of money which may come to the state treasury, in cases where a person has served several terms as collector of taxes, with different sureties for the several terms; but as the statutes stand, the accounts of collectors may be speedily closed and adjusted; but if this were not so, it would be no sufficient nor good reason for placing burdens upon those who have never contracted to assume them, simply as a matter of public convenience.

It appears from the special findings, that the collector, after he gave the bond sued upon in this cause, collected of the taxes due for the years 1874 and 1875 the sum of $1,065, which is not in terms as we understand the pleadings embraced in the present suit.

The cause will be remanded that this item, if the state see proper to do so, may be embraced in the pleadings, and that a full adjustment of all matters between the parties may be had without resort to another suit.

For the errors herein indicated, the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 16, 1882.]