331; Fry v. State, 86 Tex. Cr. R. 73, 215 S. W. 560; Martin v. State, 36 Tex. Cr. R. 632, 36 S. W. 587, 38 S. W. 194; Ham v. State, 4 Tex. App. 645."

Upon another trial appellant's affirmative defense should be submitted to the jury. The fact that the affirmative defense was not adequately submitted was pointed out in exceptions to the court's charge.

The judgment is reversed, and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

### MILLER et al. v. STATE.

No. 3895.

Court of Civil Appeals of Texas. Amarillo.

Oct. 19, 1932.

Rehearing Denied Nov. 2, 1932.

See, also, 53 S.W.(2d) 790.

Bartlett, Thornton & Montgomery, of Dallas, for appellants.

James V. Allred, Atty. Gen., R. G. Waters and Neal Powers, Asst. Attys. Gen., and R. D. Oswalt, of Crowell, for the State.

HALL, C. J.

From the record before us it seems that this case has been tried in the court below and is here on appeal as an agreed case under R. S. art. 2177. While the record does not in all things comply with the statute and the rules governing the procedure in such cases, these defects will be waived and the appeal considered.

It appears that the appellant Miller was elected tax collector of Foard county, assuming the duties of the office on January 1, 1929, and that he was re-elected in 1930 and qualified for his second term January 1, 1931, and served until September 1, 1931. His first official bond, with the American Surety Company of New York as surety, was duly executed and filed January 1, 1929. His second bond was duly executed and filed on January 1, 1931. The bonds are identical in their provisions, except as to dates and amounts, and both contain the following condition: "If the said Que R. Miller shall well and faithfully perform all the duties of his office as collector of taxes for and during the full term for which he was elected, then this obligation shall be null and void; otherwise to remain in full force and effect." Certified copies of the bonds are made parts of the record, which contains these further material facts, briefly stated: The first bond is in the sum of $14,-760; the second is in the sum of $16,554.-80. It is further stipulated that Miller acted as tax collector from January 1, 1929, until about September 1, 1931, and during said period accounted to the state of Texas for all taxes, penalties, and interest collected by him prior to December 1, 1930. That

from December 1, 1930, until he ceased to act, he collected as taxes, penalties, and interest due the state of Texas, the sum of $19,213.84. That subsequent to December, 1930, he deposited in the Bank of Crowell (the legally selected depository of Foard county), to his credit as collector, the sum of $15,037.59. That though legal demand had been made therefor, he had failed and refused to pay over to the state of Texas and the treasurer thereof said taxes, penalties, and interest, the sum of $16,720.83 which he had collected. That of such sum $3,334.22 represents taxes, penalties, and interest due the state collected by him in December, 1930, and the sum of $13,386.61 represents taxes, penalties, and interest due the state which he had collected during the first eight months of the year 1931, "unless the depositing of $15,037.59 in the county depository hereinbefore mentioned constitutes a remittance and a paying over of such funds to the extent of the amount so deposited to the proper officials of the State of Texas." It is further stated that the account of Miller as tax collector in the county depository as of July 20, 1931, was overdrawn in the sum of $6.12. That on said date the depository bank closed its doors and has since ceased to do business, and since said time Foard county has no designated county depository, and no further deposits were made by Miller as tax collector in any banking institution, and that there is now no fund on deposit in any bank or elsewhere out of which the state of Texas can satisfy its claim against Miller.

The suit was filed in Foard county and by agreement the venue was changed to Wilbarger county.

Based upon the agreed case, the court rendered judgment against Miller and the American Surety Company of New York, jointly and severally, in the sum of $16,720.83, decreeing that of such amount the sum of $3,334.22 should bear interest at 6 per cent. from January 1, 1931, and the remainder should bear interest at the same rate from January 1, 1932.

From this judgment the American Surety Company has appealed.

The controversy is before us upon three propositions, as follows:

(1) Where state taxes have been deposited by the tax collector and accepted by the duly qualified depository as a deposit to his credit as tax collector, as in this case, the depository becomes charged with the duty of paying the money, less the approved commissions, to the state treasurer and the surety on the collector's official bond is no longer liable therefor;

(2) The surety on a tax collector's bond is not liable for money which he is permitted, by the official depository, to withdraw from his official account;

(3) The judgment rendered against this appellant includes at least a part of the amount deposited by Miller in the county depository and to that extent is without evidence to support it for the reason that there is no evidence that Miller was responsible for the deficit in his official account.

This is not an action sounding in tort. The state does not sue to recover money which has been embezzled or misapplied. The suit is based upon the two bonds made by the tax collector which, as heretofore stated, bind him to faithfully perform all the duties of his office as collector of taxes.

■ As said in State v. Middleton's Sureties, 57 Tex. 185, the contract of the sureties upon a tax collector's bond is that the collector shall pay in to the state treasurer either directly or indirectly all funds which he might collect and which under the law are so to be paid. Judge Stayton further said in that case that: "The money in the hands of the collector is not his money * * * he pays it over in the performance of his duty,—the duty which the sureties have undertaken that he shall perform faithfully. * * * It is true, as argued, if the collector shall misapply the public funds, his sureties are responsible." The statutes of this state clearly and definitely set out the duties of the tax collector, and these statutes enter into and are necessarily a part of the contracts evidenced by the collector's bond.

■ As said in 7 Tex. Jur. 86, § 24, the obligors in a bond executed pursuant to a statute are presumed to have known the terms of the statute and to have contracted accordingly. The statute (see Rev. St. 1925, art. 7247) upon which such a bond rests and to which it relates becomes a part of the bond to the same extent as though incorporated in the instrument and should be read into it regardless of the intention of the parties.

■ R. S. art. 2549, relating to the selection of the depository for county funds, provides, in part, as follows: "It shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collections and settlement thereon. * * *" The article then provides for the accrual of interest on daily balances, that the bond of the depository should stand as security for all such funds, and proceeds as follows: "Upon such funds being deposited as herein required, the tax collector and sureties

on his bonds shall thereafter be relieved of responsibility for its safe-keeping."

The appellants insist that under the above-quoted provisions of the statute the depository is alone responsible for taxes which have been collected and deposited in accordance with the provisions of this article of the statute. We cannot assent to this proposition.

As held in State v. Harvey (Tex. Civ. App.) 15 S.W.(2d) 82, this article only requires the collector to deposit money as soon as collected pending the preparation of his monthly reports and payments to the officers of the state and county as directed by articles 7250, 7260, and 7261.

Also, the further provisions of article 7260 refute the contention of appellants. This article further prescribes the duties of the tax collector with reference to all sums which have been deposited by him.

Subdivision 1 of the article provides: "At the end of each month the tax collector shall * * * make an itemized report under oath to the Comptroller, showing each and every item of ad valorem, poll and occupation taxes collected by him during said month, accompanied by a summarized statement showing full disposition of all State Taxes collected. * * *"

Subdivision 2 provides: "He shall present such report, together with the tax receipt stubs to the county clerk, who shall within two days compare said report with said stubs, and if same agree in every particular as regards names, dates and amounts, he shall certify to its correctness. * * *"

Subdivision 3 provides: "The tax collector shall then immediately forward his reports so certified to the Comptroller, and shall pay over to the State Treasurer all moneys collected by him for the State during said month, excepting such amounts as he is allowed by law to pay in his county, reserving only his commissions on the total amount collected, and to enable him to do so, he may, at his own risk, send the same to the State Treasurer at the least cost to the State, on which he shall be allowed credit by the Comptroller upon filing receipt showing actual amount of exchange paid. The tax collector may, in making remittances of funds to the State Treasurer or any other State officer, board, commission or employee of the State, make the same by sending cash or a check on the county depository, if the funds are in the county depository, or if the same, in due course, are required to be in such depository. * * * If such funds are sent in cash, by registered letter, by post-office money order, express money order or by bank draft or bank check or depository check, in such event the liability of the persons sending the same shall not cease until the same money is actually received by the State Treasurer or the duly authorized State depository or other authorized officer in due course of business. The State Treasurer, whenever he may receive a remittance from a tax collector, shall promptly pay the money so remitted to the State Treasury, on the deposit warrant of the Comptroller, and the money when so deposited shall be a credit to the said tax collector."

There is nothing in the law which authorizes the selection of a depository for county funds which requires the depository to make any remittance of said funds or any part thereof to the state treasurer or any other officer.

We believe, as suggested by appellee, that the enactment of the county depository law was to provide a place of deposit for moneys collected by the tax collector pending the preparation of his report and the remittance by him to the state treasurer. Prior to the enactment of the depository law, tax collectors were held responsible for all taxes collected by them without regard to the manner in which such funds were lost; this rule being subsequently modified by relieving them of liability if the loss was the result of the act of God or the public enemy. By providing for a county depository which was required to make a bond for the safe-keeping of the funds intrusted to it, the Legislature sought only to relieve the tax collectors of liability pending the making of their report and a remittance to the proper officers mentioned in the foregoing statute.

The agreed case shows that at the time the county depository closed its doors and ceased to do a banking business, Miller's account as tax collector was overdrawn $6.12. This does not indicate that the depository bank had embezzled or misapplied any of the funds.

Although Miller filed a cost bond, he has filed no brief in this case and does not question the right of the state to a judgment against him.

The provision in R. S. art. 2549, supra, that upon such funds being deposited the tax collector and sureties on his bond should thereafter be relieved of responsibility for its safe-keeping, has no reference whatever to the duty of the tax collector to subsequently remit such funds to the state treasurer.

■ The contention of the appellants to the effect that the depository bank in permitting Miller to withdraw the funds for his individual use, released the surety on the collector's bond, is without merit. The record does not show who withdrew such fund nor who is responsible for the money being withdrawn, nor was it necessary for the state to prove these facts.

With reference to this contention, it is said in 3 Cooley on Taxation (4th Ed.) 2707, § 1373: "In many cases it is made the duty of some auditing board or other authority to examine

the collector's accounts periodically, and come to a settlement with him for previous collections. Undoubtedly all such boards or authorities should perform their duty, and give the sureties such benefit as might accrue to them therefrom; but the legal view of provisions of law imposing such duties is, that they are made, not for the protection of sureties, but of the public. The sureties undertake for the conduct of the principal, and cannot require the state to protect them against his misconduct or neglect. If, therefore, they suffer from neglects which are not only his neglects, but also those of some other public officer or board, the loss must be borne by themselves. If periodical settlements would tend to their advantage, they will be expected to look after them in their own interest."

Miller contracted at his own risk to send the money to the state treasurer at the least possible cost to the state. The language of the article clearly implies that the remittance is to be made by the collector and not the depository bank and that the collector alone is to be credited with the amount of the remittance, when it is said the "State Treasurer, whenever he may receive a remittance from a tax collector, shall promptly pay the money so remitted to the State Treasury, on the deposit warrant of the Comptroller, and the money when so deposited shall be a credit to the said tax collector." The liability of the collector and not the depository bank is also emphasized by this further language in the statute: "The liability of the persons sending the same shall not cease until the same money is actually received by the State Treasurer or the duly authorized State depository or other authorized officer in due course of business." Prior to the enactment of the depository law the tax collector was an insurer, and such law modified his liability by relieving him of responsibility where the money was lost by the bank and such loss occurred without the fault of the collector. State v. Tyler County State Bank (Tex. Com. App.) 282 S. W. 211, 45 A. L. R. 1483. If the money was lost by the bank through no fault of Miller, that fact should have been pleaded and proven. Wilson v. County of Wichita, 67 Tex. 647, 4 S. W. 67.

Where the suit is brought by the state based upon the official bond and the state proves the amount of money collected and the amount accounted for or remitted, leaving a deficiency, as in this case, the state has made a prima facie case and is entitled to recover without being required to go into the enemies' camp and show who has embezzled or misappropriated it. Mahon v. Kinney County (Tex. Civ. App.) 28 S. W. 1024; State v. Middleton's Sureties, supra.

The judgment is affirmed.

MARTIN, J., not sitting.