

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

Honorable Tom F. Coleman, Jr.
County Attorney
Angelina County
Lufkin, Texas

Dear Sir:

Opinion No. O-1739
Re: Does Senate Bill No. 89,
Acts of the 46th Legislature,
1939, donate to the counties
named therein State ad valorem
tax money to reimburse said
counties for all the back
years that the Federal Govern-
ment has held land in said
counties, or does the same
donate said money to those
counties to reimburse them
for the loss of taxable values
they sustained each year after
the effective date of the Act?

We are in receipt of your letter of November 27, 1939,
in which you request this Departments' construction of Senate
Bill No. 89, Acts of the 46th Legislature, 1939, under the state
of facts as you set out in your letter as follows:

"The Commissioners' Court of Angelina
County passed an Order requesting the Assessor-
collector to turn over to the County Treasury
sufficient funds to cover the tax loss for the
entire five-year period. He complied with
this request. Since this time the State Comp-
troller has called on him to turn into the
State all State taxes except such an amount
as would be sufficient to cover the taxes on
the Federal land for the current year."

You request an opinion of this Department as to whether
or not the Assessor-collector of Angelina County was authorized

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

rable Tom F. Coleman, Jr., Page 2

to turn over to the County Treasurer of Angelina County State
ad valorem taxes to cover the County's tax loss for the entire
five-year period that the Federal Government has owned land in
said County.

The answer to your question can only be determined
. proper construction of the language of Senate Bill No. 89
.lf.

> "Section 1. That from and after the
> effective date of this Act, the Assessor
> and Collector of Taxes for each of the
> Counties of Jasper, Sabine, San Augustine,
> Shelby, Trinity, Houston, Tyler, Angelina,
> San Jacinto, and Walker, in this State
> shall ascertain the number of acres of
> land purchased or leased by the Federal
> Government in their respective counties
> and shall make a report under oath to the
> Commissioners' Court of such county as to
> the number of acres of such lands purchased
> and/or leased by the Federal Government in
> such county.

> "Section 2. Upon the filing of said
> report, as provided in Section 1 of this
> Act, with the Commissioners' Court by the
> Assessor and Collector of Taxes, the Commis-
> sioners' Court of each County above named
> shall at their regular annual meeting as a
> Board of Equalization in May of each year
> fix a valuation upon such lands; the valua-
> tion fixed upon such lands shall be the same
> as fixed by the Equalization Board upon other
> and similar adjoining lands, for taxation
> purposes the said Court shall at the same
> time determine the amount of taxes that said
> County and precincts and districts has lost
> as a result of the Federal Government having
> purchased or leased said land.

> "Section 3. The Assessor and Collector
> of Taxes of the Counties hereinabove named
> shall make an itemized report under oath,
> showing the valuation fixed by the Board of
> Equalization on such lands and the amount
> of the county ad valorem taxes that would
> accrue thereon, as approved by Commissioners'

Court, were they not exempt by reason of purchase or lease by the Federal Government, based upon such valuations and fixed at the prevailing rate for the county ad valorem taxes on lands similarily situated. The Assessor and Collector of Taxes shall show in said report the total amount of county ad valorem taxes which would have been assessed against all lands within said county owned or leased by the Federal Government, and shall forward said report to the Comptroller of Public Accounts at Austin.

"Section 4.   The Comptroller of Public Accounts shall upon receipt of such report check the same as to the correctness thereof, and if found correct, shall approve such report.  The total amount of county ad valorem taxes which would have been assessed against the lands owned or leased by the Federal Government within such county, as shown by the report of the County Tax Assessor and Collector, and approved by the Comptroller of Public Accounts, shall be the measure of the amount of the State ad valorem tax to be donated, and granted to such county, as hereinafter provided.

"Section 5.   There is hereby donated, and granted to each of the Counties of Jasper, Sabine, San Augustine, Shelby, Trinity, Houston, Tyler, Angelina, San Jacinto, and Walker, all of the State ad valorem taxes necessary to reimburse said County for the loss sustained by said County or Counties and not to exceed this amount, levied and collected in each respective County for general revenue purposes upon property and from persons in each respective County including the rolling stocks of railroads, or so much of such State ad valorem taxes collected as shall be equal to the amount to be determined in accordance with Section 4 hereof.  The taxes hereby donated shall be levied and collected as now provided by law except that the Assessor and Collector of Taxes

in each respective County shall forward his
report to the State Comptroller of Public
Accounts as provided by law, and shall pay
over to the Treasurer of each respective
County all moneys collected by him at the
end of each month, except such amounts as
are allowed by law for collecting and assess-
ing the same; and shall forward a duplicate
copy of the receipts given him by the County
Treasurer for said money to the Comptroller.

"Section 8.  The fact that the United
States Government has purchased or leased a
large acreage of cut over lands in the Coun-
ties named in Section 1 hereof, thereby
taking off of the tax rolls great valuations
for taxable purposes in each of such Counties;
and the fact that the loss of such taxable
values in such Counties render them incapable
of carrying on county government and paying
the expenses incident thereto; and the further
fact that said Counties have not yet recovered
from the disastrous results incident to the
calamitous occurrences hereinabove enumerated
create an emergency and an imperative public
necessity that the Constitutional Rule requir-
ing bills to be read on three several days in
each House be suspended and said Rule is here-
by suspended, and this Act shall take effect
and be in force from and after its passage,
and it is so enacted."

This Department is unable to find, from a careful anal-
ysis of the above Sections of Senate Bill No. 89, any authority
for your Tax Collector to retain State ad valorem tax money to
reimburse Angelina County for its tax losses during the past five
years because of Federal owned lands in said County.  A careful
reading of the Act can only lead one to the conclusion that the
donation set out therein is to be determined on a yearly basis
beginning with the effective date of the Act.

Of necessity, before any amount of State tax money may
be donated to the county, it is necessary that a valuation be
fixed upon the Federal owned lands in said county by the Board
of Equalization.  In Section 2, supra, the Legislature has provid-
ed that such valuation is to be determined by the Commissioners'

Court of each county "at their regular annual meeting as a Board of Equalization in May of each year". The valuation of the property for tax purposes is determined as of the time of said annual meeting. Certainly this does not contemplate that the Commissioners' Court will meet and determine the valuation of the lands for years back. Rather, this language of the Legislature contemplates the Board of Equalization acting on this Federal owned land each year just as it would if said land were privately owned. It is also to be noted that at the same time the valuation is fixed upon such land the Court is to determine the amount of taxes that the county, precincts and districts are to lose as a result of the Federal Government having purchased or leased the land. This amount of tax loss is determined as of the year for which the Board of Equalization is valuating the land for tax purposes. There is no method by which the amount of taxes lost during past years may be determined unless the Commissioners' Court is given the authority to valuate the property as of each of the prior years. Nowhere in this entire Act can such authority be found. On the other hand, the Legislature has been specific in requiring the valuation to be made each year and the amount of taxes to be lost by the county to be determined as of that time.

This Department ruled in Conference Opinion No. 3083, addressed to Honorable Geo. H. Sheppard, that for the year 1939, the several Commissioners' Courts could meet and fix a valuation upon the land owned by the Federal Government in each of the counties. This Opinion held further that the Commissioners' Courts could determine the value of the Federal land and the amount of tax being lost thereby in 1939. However, nowhere in that Opinion, or in the Act itself, is there any indication that the county is entitled to money for the back years that the Federal Government has owned land in said county, and nowhere can there be found any authorization for the action taken by the Assessor-collector of your County.

Section 3, supra, authorizes the Assessor-collector of Taxes to make an itemized report showing the valuation fixed by the Board of Equalization and the amount of county ad valorem taxes that would accrue thereon. In that same Section, it is provided that said Assessor-collector shall show the total amount of county ad valorem taxes which would have been assessed against all land within said county owned or leased by the Federal Government and shall forward said report to the Comptroller of Public Accounts at Austin. The use of the word "would" indicates that the determination of amount of taxes is not the amount that has

Honorable Tom F. Coleman, Jr., Page 6

been lost in past years but the amount that would accrue, or the amount that would have been assessed against the land had the same not been owned by the Federal Government. This language takes out of the Act all possibility of the Legislative intention having been that the Act should be retroactive.

The amount of the actual donation is determined by Section 4. The Comptroller of Public Accounts is to check the reports submitted to him, and is to determine the total amount of county ad valorem taxes which would have been assessed against the land owned or leased by the Federal Government within the county and the same shall be the measure of the amount of State ad valorem tax to be donated to the county. The report is to be approved by the Comptroller of Public Accounts. Section 5 of the Act makes the actual donation in accordance with the terms of Section 4. There is no procedure in either Section 4 or 5 to determine the amount that the county has lost in prior years, for the Comptroller of Public Accounts to be able to certify such a tax donation to the county.

Section 8 is the emergency clause. The emergency set up in said Section is not that a great amount of money has been lost to the counties for which they must be reimbursed, but that great valuation for taxable purposes in each of said counties has been taken off of the county tax roll, and that the loss of such taxable values render them incapable of carrying on county government and paying the expenses incident thereto. The term "render them incapable" looks to the future. In other words, the Legislature is here setting up a method whereby each year the amount of taxes lost by the counties because of the loss of taxable valuation is being donated to said counties out of the State ad valorem taxes so that they may be capable of carrying on county government and paying the expenses incident thereto.

It is the opinion of this Department, therefore, that the Assessor-collector of Angelina County had no authority to withhold out of the State ad valorem tax money a sum to re-pay said County for losses accruing to it during years prior to 1939, by reason of the Federal Government owning property in said County.

In your letter you also inquire whether or not the Assessor-collector of Angelina County is liable to the State for the taxes paid over to the County Treasurer if said payment was unlawful. You inquire further as to the method of recovery of said tax money from the County Treasurer.

Honorable Tom F. Coleman, Jr., Page 7

Before the Assessor-collector is authorized to turn any money over to the County Treasurer, under the provisions of Senate Bill No. 89, his report must be approved by the Comptroller of Public Accounts at Austin, Texas. We have examined the records of the Comptroller of Public Accounts and find that not only did the Assessor-collector of your County fail to obtain such approval before he paid this money over to the County Treasurer but that his payment was made despite the fact that on November 6, 1939, the Comptroller of Public Accounts certified to him that he was authorized to pay to said County Treasurer the amount of tax donation authorized for the year 1939, and that year alone.

Article 7247 of the Revised Civil Statutes requires the Assessor-collector to post a bond for State taxes. Article 7260 of the Revised Civil Statutes provides for the method of payment of State moneys by the Tax Collector of the county to the State Treasurer, and for failure to do so Section 7 of said Article provides as follows:

"The Comptroller shall notify the District Attorney of the district or the County Attorney of the county in which the collector resides, and the sureties on the bond of the collector, of any failure to comply with any provisions of this article. Acts 1893, p. 90; G.L. vol. 10, p. 520; Acts 1915, p. 190; Acts 1923, 3rd C.S., pp.157, 188; Acts 1935, 44th. Leg. p. 673, ch. 285, § 1."

Article 7294 of the Revised Civil Statutes provides as follows:

"All tax collectors and other officers or appointees authorized to receive public moneys shall account for all moneys in their hands belonging to the State, and pay the same over to the State Treasurer whenever and as often as they may be directed so to do by the Comptroller; provided that tax collectors shall have thirty days from the date of such direction within which to comply with the same. Acts 1879, S.S., p. 5; G.L. vol. 9, p. 37."

Honorable Tom F. Coleman, Jr., Page 8

There can be no question but that the above quoted Articles authorize a suit by the State of Texas against the Assessor-collector of Angelina County and his sureties in this case. The Supreme Court of Texas, in an opinion written by Chief Justice Roberts, in the case of Boggs v. The State, 46 Tex. 10, discussed the liability of a Tax Collector and the sureties on his bond, and stated as follows:

"It is contended by the counsel for the appellants that Boggs, being an officer, occupied towards the State the position of a bailee for hire, in the business of col- lecting, preserving, and accounting for the taxes of Rusk county, and that as he took care of the money in his hands, as a prudent man would ordinarily have done, in reference to his own property, neither he nor his sureties were responsible for its loss.

"We do not understand such to be the legal position and responsibility of the public officer whose duty it is to collect and account for the money of the State as a tax collector, nor is it in accordance with the terms of his bond, signed by him and his sureties, as prescribed by law.

"He is bound to account for and pay over the amount of money which he collects less his commissions, or his sureties must do it for him. (Paschal's Dig., art. 7481; Boyden v. United States, 13 Wall., 17.)"

The obligation of the sureties in this case would be as stated by Judge Stayton in the case of State of Texas v. Middleton's Sureties, 57 Tex. 185, as follows:

"* * * for the contract of the sureties was, in effect, that the collector would pay into the State Treasury, either directly or indirectly, * * *all funds which he might collect, which under the law was so to be paid."

The position of the State of Texas in such a matter was best stated by the Amarillo Court of Civil Appeals in the case of Miller v. State, 53 S. W. (2d) 792, as follows:

norable Tom F. Coleman, Jr., Page 9

"Where the suit is brought by the
state based upon the official bond and the
state proves the amount of money collected
and the amount accounted for or remitted,
leaving a deficiency, as in this case, the
state has made a prima facie case and is
entitled to recover without being required
to go into the enemies' camp and show who
has embezzled or misappropriated it.
Mahon v. Kinney County (Tex. Civ. App.)
28 S. W. 1024; State v. Middleton's Sure-
ties, supra."

You are, therefore, advised that the State of Texas
t look to the Assessor-collector of Angelina County for the
unt of State ad valorem taxes which he has wrongfully paid
the County Treasurer instead of the State Treasurer. The
per procedure is for the Commissioners' Court to authorize
County Treasurer to return this money to the Tax Collector
should then forward the same to the State Treasurer.

We would like to point out that this opinion is not
be construed as passing on the constitutionality of Senate
l No. 89.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Billy Goldberg
Billy Goldberg
Assistant

S

APPROVED DEC 9, 1939

ATTORNEY GENERAL OF TEXAS